APPLICATION OF REX L. FARMER.
Rex L. Farmer was one of the applicants for license to practice law in this State at the January examination, held in the city *Page 236 
of Raleigh on Monday, 25 January, 1926. Before entering upon the examination and sometime prior thereto, said applicant was notified of a protest on file in the clerk's office against the issuance of a license to him, on the ground that "he is not a citizen of upright character." Notwithstanding this protest, which is signed by a number of residents of Wilson County, the applicant, who had complied with all the preliminary requirements, persisted in taking the examination and has tendered a creditable paper showing that he has a competent knowledge of the law, hence the question raised by the protest is directly presented. See Rule 3 1/2(a), 190 N.C. 883.
C.S., 194, provides that no person shall practice law in this State without first obtaining license to do so from the Supreme Court; that all examinations shall be in writing, and based upon such course of study, and conducted under such rules, as the Court may prescribe; and further that all applicants who satisfy the Court of their competent knowledge of the law and upright character shall receive license to practice law in all the courts of the State.
Due notice having been issued to protestants and respondent, the matter was heard in open court on 11 February, 1926, the protestants being represented by Mr. R. F. Mintz of the Wilson bar, and the respondent by Mr. O. P. Dickinson, also of the Wilson bar.
The protest, among other things, is based upon allegations, supported by affidavits, to the effect that the respondent, Rex L. Farmer, is a man of questionable character; that, in his office as a justice of the peace of Wilson County, he has not only failed to make due returns and account for moneys and things intrusted to him, but in some instances, he has converted them to his own use; and that he has generally engaged in unethical practices.
It is alleged that on or about 15 September, 1925, one Olive Crayer (or Clary) issued a State warrant against J. W. Miller before the said Rex L. Farmer, charging the defendant with "fraudulently obtaining a diamond ring"; that the ring was delivered to the justice of the peace in lieu of an appearance bond, but was not reported to the clerk of the Superior Court, as the papers in the case were never sent up by the justice of the peace; and that in response to a writ of recordari issued by the Superior Court of Wilson County, the said justice of the peace incorporated the following statement in his return:
"Warrant served and defendant and prosecuting witness both appearing before the undersigned the defendant agreed to return to the prosecuting witness the ring in question whereupon the prosecuting witness withdrew the prosecution. Cost in the case being paid by the prosecuting witness. *Page 237 
"A statement was made to the undersigned justice of the peace by the defendant that he did not believe the ring was the legal property of the prosecuting witness, however the defendant admitted he had no claim upon the ring, and upon this statement the undersigned informed the prosecutrix that she would have to show how she came by the ring before the justice of the peace felt justified in returning to her the ring, whereupon, the prosecuting witness, Olive Clary, agreed that it would be to her satisfaction for the undersigned to hold said ring until such time as she could prove her legal ownership.
"The ring in question is now in the possession of the undersigned as a trustee and not in custodia legis and will be delivered to the rightful owner at the proper time.
"In consequence of the foregoing the papers in the case were destroyed. Rex L. Farmer, justice of the peace."
The above return was accompanied by three affidavits — no reason being assigned therefor — in which the affiants, purporting to speak of their own knowledge, corroborate the statement of the justice of the peace as to how he came into the possession of the ring and why he continued to hold it.
But as against this return, it is alleged, and not denied, that in December, 1925, the said J. W. Miller sued out a claim and delivery against the said Rex L. Farmer in the County Court of Wilson County to recover the possession of the diamond ring in question and that it was adjudged in said county court that J. W. Miller was legally entitled to its possession.
There are several charges, supported by affidavits, of bad checks being turned over to the respondent as a justice of the peace, collected by him and no satisfactory accounting made of them.
It is also alleged, but without supporting affidavit and vigorously denied, that the respondent has failed and refused to account for all the funds received by him while an officer of the Wilson Ku Klux Klan.
It is further alleged, as tending to show the respondent's attitude toward the law and the courts, that on or about 30 October, 1925, while hearing a case, some reference was made to a Supreme Court ruling, in reply to which the respondent said: "To hell with the d____ Supreme Court. I don't give a d_____ for the Supreme Court or any other court. I am running my own court as I d_____ please." The respondent denies that any such language was ever used by him.
In addition, the protestants have offered a number of affidavits to the effect that the respondent is not generally regarded as a reliable man, or as a man of good moral character, but, on the other hand, that he is generally considered to be a man of bad character. *Page 238 
In answer to these charges, the respondent has offered a large number of affidavits from citizens of Wilson County who testify to his general good character, and one in particular which states that while he may have exhibited some faults and frailties in his immature years, it has been a matter of gratification to his friends to witness the calm, equable and well-poised manner in which he has approached his riper manhood.
The respondent further contends that the matters and things herein complained of, should not be held to bar his right to receive license to practice law in this State, because he alleges, the protestants are not actuated by proper motives, but by ill will towards him. However this may be, the Court must base its judgment on the record.
After a careful and painstaking consideration of all the matters contained in the papers before us, and with a full appreciation of the effect of our decision, we are constrained to believe that the evidence adduced shows such a lack of moral perception, or careless indifference to the rights of others, as to render the Court unable to say that the respondent, Rex L. Farmer, possesses the necessary upright character to entitle him to license to practice law.
This "upright character," prescribed by the statute, as a condition precedent to the applicant's right to receive license to practice law in North Carolina and of which he must, in addition to other requisites, satisfy the Court, includes all the elements necessary to make up such a character. It is something more than an absence of bad character. It is the good name which the applicant has acquired, or should have acquired, through association with his fellows. It means that he must have conducted himself as a man of upright character ordinarily would, should or does. Such character expresses itself, not in negatives nor in following the line of least resistance, but quite often in the will to do the unpleasant thing, if it is right, and the resolve not to do the pleasant thing, if it is wrong. "Character," said Mr. Erskine in the trial of Thomas Hardy for high treason, "is the slow-spreading influence of opinion arising from the deportment of a man in society, as a man's department, good or bad, necessarily produces one circle without another and so extends itself till it unites in one general opinion." Even more is this true when the restoration of character, as here, is the subject of consideration. It is then a matter of time and growth.
The reason and policy underlying the statute were fully discussed on a former occasion, In re Applicants for License, 143 N.C. 1, at which time,Brown, J., gave the following expression to his views: "The public policy of our State has always been to admit no person to the practice of the law unless he possessed an upright moral character. The possession of this by the attorney is more important, if anything, to the public *Page 239 
and to the proper administration of justice than legal learning. Legal learning may be acquired in after years, but if the applicant passes the threshold of the bar with a bad moral character the chances are that his character will remain bad, and that he will become a disgrace instead of an ornament to his great calling — a curse instead of a benefit to his community — a Quirk, a Gammon, or a Snap, instead of a Davis, a Smith, or a Ruffin."
And we may pause to say that this requirement of the statute is eminently proper. Consider for a moment the duties of a lawyer. He is sought as counselor, and his advice comes home in its ultimate effect to every man's fireside. Vast interests are committed to his care; he is the recipient of unbounded trust and confidence; he deals with his client's property, his reputation, his life, his all. An attorney at law is a sworn officer of the court, whose chief concern, as such, is to aid in the administration of justice. In addition, he has an unparalleled opportunity to fix the code of ethics and to determine the moral tone of the business life of his community. Other agencies, of course, contribute their part, but in its final analysis, trade is conducted on sound legal advice. Take, for example, a commercial center of high ideals, another of low standards, and there will invariably be found a difference between the bars of the two localities. The legal profession has never failed to make its impress upon the life of the community. It is of supreme importance, therefore, that one who aspires to this high position should be of upright character, and should hold, and deserve to hold, the respect and confidence of the community in which he lives and works. In re Dillingham, 188 N.C. p. 165;In re Applicants for License, 143 N.C. 1.
"No profession," says Mr. Robbins in his American Advocacy, 251, "not even that of the doctor or preacher, is as intimate in its relationship with people as that of the lawyer. To the doctor the patient discloses his physical ailments and symptoms, to the preacher the communicant broaches as a general rule only those things that commend him in the eye of heaven, or those sins of his own for which he is in fear of eternal punishment, but to his lawyer he unburdens his whole life, his business secrets and difficulties, his family relationships and quarrels and the skeletons in his closet. To him he often commits the duty of saving his life, of protecting his good name, of safeguarding his property, or regaining for him his liberty. Under such solemn and sacred responsibilities, the profession feels that it owes to the people who thus extend to its members such unparalleled confidence the duty of maintaining the honor and integrity of that profession on a moral plane higher than that of the merchant, trader or mechanic."
While not mentioned as prerequisites, it may be stated that no one should seek to enter the legal profession, "in its nature the noblest and *Page 240 
most beneficial to mankind, in its abuse and debasement the most sordid and pernicious," who does not understand its high mission or who does not feel its essential nobility. It is neither a place of refuge nor a reformatory for those who have stumbled in other fields.
Application denied.
APPLICATION OF OTIS W. DUKE.
STACY, C.J. The second applicant to persist in taking the January examination in the face of a protest was Otis W. Duke of Greensboro. He has tendered a satisfactory paper showing that he has a competent knowledge of the law, hence the necessity of considering the merits of the protests filed against the issuance of license to him. Rule 3 1/2 (a), supra. The original protest was made by Mrs. Martha H. Duke, divorced wife of the respondent. On notice from the clerk, Mr. A. B. Andrews, Chairman of the Committee on Admission to the Bar and Legal Education of the North Carolina Bar Association, filed in the name of the North Carolina Bar Association a formal protest based on Mrs. Duke's allegations and forwarded copies of all papers to the local bar association of Guilford County. A committee appointed by said Guilford County Bar Association heard evidence from both protestant and respondent and transmitted same to the Court for its convenience and consideration in determining the matter.
The protest was heard in open Court on 11 February, 1926, the protestant, Mrs. Martha H. Duke, appearing in person and the respondent being represented by Major E. D. Kuykendall and Mr. Shelley B. Caviness of the Greensboro Bar.
All the affidavits forwarded by the committee of the Guilford County Bar Association and others were offered in evidence for the consideration of the Court in determining the question as to whether the respondent, Otis W. Duke, is of sufficient upright character to warrant the issuance of license to him. C.S., 194.
From these affidavits, it appears, without contradiction, that in August, 1922, while a deputy sheriff of Guilford County, the respondent attended a ball game at Monticello, about ten miles north of Greensboro, became intoxicated, engaged in a fight, used a deadly weapon, and was indicted in six cases, which were disposed of at the October Term, 1922, Guilford Superior Court, as follows:
No 4. State v. O. W. Duke. Nuisance, using profane and indecent language on highway. Defendant pleads guilty. Judgment of the court that the defendant pay a fine of $25.00 and costs.
No. 5. State v. O. W. Duke. Assault. Defendant pleads guilty. Judgment of the court that the defendant pay a fine of $50.00 and costs. *Page 241 
No. 6. State v. O. W. Duke. Carrying concealed weapon. Defendant pleads guilty. Judgment of the court that the defendant pay a fine of $50.00 and costs.
No. 7. State v. O. W. Duke. Assault with a deadly weapon. Defendant pleads guilty. Prayer for judgment continued on payment of costs.
No. 8. State v. O. W. Duke. Resisting officer. Defendant pleads guilty. Prayer for judgment continued on payment of costs.
No. 9. State v. O. W. Duke. Pointing pistol. Defendant pleads guilty. Prayer for judgment continued on payment of costs.
In addition to the judgments entered in the above cases, in three of which the prayers for judgment were continued, the respondent was discharged as a deputy sheriff of Guilford County.
At the March Term, 1924, Guilford Superior Court, P. H. Petree recovered a judgment of $200.00 against the respondent in a civil action for a wrongful assault.
At the August Term, 1924, Guilford Superior Court, the protestant, Mrs. Martha H. Duke, obtained an absolute divorce from the respondent on the statutory ground of adultery, and the court found the following facts and incorporated them in the judgment:
"The Court finds as a fact that the defendant, Otis W. Duke, is not a fit and suitable person to have the care and custody of Mary Helen Duke, minor child of plaintiff and defendant, and the court further finds that the plaintiff, Martha H. Duke, is a fit and suitable person to have the care and custody of said minor child, and the interest of said minor child will be best served by being placed in the care and custody of said Martha H. Duke."
The protestant alleges that this divorce proceeding was instituted at the instance of the respondent; that he furnished her money with which to bring the suit; and that the witnesses were procured and selected by him.
There are several other charges preferred against the respondent, some involving immorality and moral turpitude, and one touching the two homicides committed by the respondent while a police officer, but as these are denied, or explanations offered, we deem it unnecessary to set them out, as we are forced to but a single conclusion on the undisputed evidence.
In reference to the criminal records, mentioned above, the respondent says that "with regret and shame he admits the unfortunate fight in which he was engaged at Monticello, which cost him his job as a deputy sheriff and at the same time showed to him the absolute folly of drinking whiskey"; that he has changed his manner of living since that time, abstaining entirely from strong drink; that he has faithfully discharged *Page 242 
his duties as a justice of the peace, since his appointment as such; that he has tried to show the officials of the city of Greensboro and of Guilford County, for whom he at one time worked, "that although a man can sometimes be `down,' he need not necessarily be `out'"; and that he has earnestly endeavored in every way possible to regain the confidence and esteem of the community — in testimony of which he files a large number of character certificates from many citizens of high standing and repute in the city of Greensboro and Guilford County. In addition, the respondent declares to the Court his intention to persist in living a better life, which is highly commendable.
He alleges that the protestant is wholly mistaken in her allegations touching his connection with the divorce proceeding. Without any ill will towards her and without any desire on his part to strike back, for he alleges that his former wife was a young woman of character and refinement at the time of their marriage in 1914, the respondent suggests that she is displeased because he was married again in the fall of 1924, about two months after the divorce, and is now living happily with his second wife, and that the protestant, Mrs. Martha H. Duke, is actuated by improper motives in filing this protest.
The undisputed facts, appearing on the record, call for but little comment; they speak for themselves. It is conceded that the respondent was discharged as a deputy sheriff of Guilford County in 1922, because of his unfitness to hold the position. At the August Term, 1924, it was solemnly adjudged by the Superior Court of Guilford County that the respondent "is not a fit and suitable person to have the care and custody of his minor child." This finding would not have been made without evidence to support it, and it will be observed that the judgment was entered during the period respondent was studying law preparatory to taking the examination for license. Rule 2, 185 N.C. 787. He is now paying into the clerk's office $30.00 a month for the support of his nine-year-old child.
Is this record such as to warrant the Court in finding that the respondent, Otis W. Duke, is now of sufficient upright character to entitle him to receive license to practice law in all the courts of North Carolina? We think not.
There is strong evidence tending to support the conclusion that the respondent was quite willing for his former wife to obtain a divorce from him. According to his own affidavit, he was living with her as late as 21 April, 1924, when they separated; he then went back for a few days about a month later; suit for divorce was instituted in June or July following, and the divorce obtained at the August Term of court thereafter. He filed no answer to her complaint charging him with adultery *Page 243 
and alleging that he was not a fit and suitable person to have the care and custody of his minor child. He married again within two months after the divorce.
If the protestant's present allegations be true, then a fraud was practiced on the court by the respondent. If they be not true, the judgment as it stands proclaims the respondent's infidelity and unfitness to have the care and custody of his minor child. So, taking either horn of the dilemma, this divorce proceeding with the judgment rendered therein is a stumbling block in the path of the respondent. If the record as made be not true, it is his fault for he was silent at a time when it was his duty to speak. But the proceeding itself imports verity. Therefore the respondent is face to face with a record, made as a result of his own wrongdoing, which negatives the conclusion that he now possesses the necessary upright character required of successful applicants for license to practice law in North Carolina.
Application denied.