WILLIAM SAMUEL BAKER, JR., v. L. R. VARSER, CHAIRMAN, AND GEORGE B. GREENE, KINGSLAND VAN WINKLE, L. T. HARTSELL, JR., BUXTON MIDYETTE, JOHN H. HALL AND THOMAS H. LEATH, ALL MEMBERS OF THE BOARD OF LAW EXAMINERS OF THE STATE OF NORTH CAROLINA, AND THE BOARD OF LAW EXAMINERS OF THE STATE OF NORTH CAROLINA.

(Filed 19 May, 1954.)

**1. Attorney and Client § 2: Administrative Law § 6—**

Upon *certiorari* to review the action of an administrative board, the hearing in the Superior Court is solely upon the record of such board as certified, without the introduction of evidence in the Superior Court.

**2. Statutes § 12—**

Where a section of the Code is not brought forward in the General Statutes and does not come within the exceptions and limitations set forth in Chapter 164 of the General Statutes, such section of the Code is repealed and cannot be revived.

**3. Appeal and Error § 8—**

An appeal *ex necessitate* follows the theory of the trial.

**4. Appeal and Error § 1—**

Where the constitutionality of a statute is not raised in the lower court, the question cannot be raised for the first time in the Supreme Court on appeal.

**5. Attorney and Client § 2—**

A person does not have a natural or constitutional right to practice law; it is a privilege or franchise to be earned by hard study and compliance with the qualifications for admission to practice law prescribed by law.

**6. Constitutional Law § 12—**

By virtue of its police power a state is authorized to establish qualifications for admission to practice law in its jurisdiction.

**7. Attorney and Client § 1—**

An attorney at law is a sworn officer of the court indispensable to the administration of justice, and has an obligation to the public as well as to his clients.

**8. Domicile § 1—**

Whether the word "residence" is synonymous with "domicile" depends upon the nature of the subject matter as well as the context in which the word is used, and a person may have his residence in one state and his domicile in another.

**9. Attorney and Client § 2—**

The requirement of Rule Five of the Rules Governing Admission to Practice Law in North Carolina in regard to "residence" means "domicile."

**10. Attorney and Client § 2—**

The burden of showing that he has the qualifications prescribed by Rule Five of the Rules Governing Admission to Practice Law in North Carolina rests upon the applicant.

**11. Same—Evidence held to support finding of Board of Law Examiners that applicant was not a resident of the State as required by Rule Five.**

The evidence before the Board of Law Examiners was to the effect that while applicant was in the armed services his parents moved to a city in North Carolina, that upon his discharge from service he returned to his parents' home and resided there for a little over a month, that he then enrolled as a student in the university of another state, that after completing school he returned to his parents' home and remained there some five months, that applicant, having reached his majority, was then employed in Washington, D. C., and that this employment was terminated and applicant returned to his parents' home in North Carolina five months prior to the filing of his application and less than six months prior to the date of the examination. Applicant introduced no evidence that he had ever registered to vote or had voted in North Carolina, or had paid income tax here. *Held:* The evidence supports the finding of the Board of Law Examiners that applicant had not been a citizen and resident of North Carolina for 12 months next preceding the filing of his application as required by Rule Five, and therefore it was the duty of the Board to deny his application to take the examination, and the ruling will not be disturbed in the absence of anything in the record tending to show that the Board's action was arbitrary or capricious.

**12. Constitutional Law § 18—**

The right to practice law in the State courts is not a privilege or immunity of a citizen within the meaning of the Fourteenth Amendment to the Federal Constitution, nor has applicant shown a violation of any rights guaranteed by the State Constitution, Article I, Sec. 17.

**13. Administrative Law § 6—**

In reviewing an order of an administrative board, the findings of fact made by the board are conclusive when supported by the evidence before it, and are not reviewable by the courts.

**14. Same—**

An order of an administrative board supported by its findings of fact will not be interfered with by the courts except upon a showing of capricious, unreasonable or arbitrary action, or disregard of law.

**15. Attorney and Client § 2—**

> The Board of Law Examiners of the State of North Carolina has been entrusted by statute with the duty of examining applicants for license and providing regulations for admission to the Bar.   G.S. 84-24.

**16. Administrative Law § 6—**

> The conclusiveness of findings of fact by an administrative agency or board is not affected by the fact a minority of its members disagree.

APPEAL by plaintiff from *Fountain, Special Judge,* March Civil Term (A) 1954 of WAKE.

This proceeding was commenced in the Superior Court of New Hanover County on 3 August 1953 to compel the defendants, The Board of Law Examiners of the State of North Carolina, to permit plaintiff to take the examination to be given applicants for admission to practice law in North Carolina in the City of Raleigh on 4, 5 and 6 August 1953.   On the same date the Honorable W. C. Harris, Resident Judge of the Seventh Judicial District of North Carolina, and for the Fall Term 1953 presiding in his district, entered an order in chambers at Wilmington, North Carolina, directing the defendants to permit plaintiff to stand the examination; and on 5 August 1953 Judge Harris in chambers at Wilmington, North Carolina, entered another order, amending and revising his first order "so as not to require directly or by implication that the defendants shall grade and evaluate the plaintiff's examination for admission to practice law in North Carolina, and that no further action is required of the defendants until the legal rights of the parties have been determined."

Pursuant to the orders of Judge Harris the plaintiff took the examination, but the defendants have not graded his examination papers.

The defendants excepted to both orders of Judge Harris, and appealed to the Supreme Court, and the opinion of this Court is reported in *Baker v. Varser,* 239 N.C. 180, 79 S.E. 2d 757.   This Court held that Judge Harris had no jurisdiction to enter the two orders, and that *mandamus* was not the proper way to present the matter for review by us.   This Court after stating that the complaint of plaintiff, liberally interpreted, seems to allege that the defendants in considering the question of plaintiff's residence within the State for twelve months, acted in misapprehension of what is in law "residence" within the purview of Rule Five governing admission to the practice of law in the State said: "Hence, rather than to dismiss the action, it is deemed proper that the complaint may be considered an application to the Superior Court for a writ of *certiorari* to the end that the record of pertinent proceeding *in respect to question of rule applied in determining residence of plaintiff within the State in connection with his application for bar examination, may be judicially reviewed."*   The orders of Judge Harris were reversed, and the proceeding

BAKER *v.* VARSER.

was remanded to the Superior Court for further proceedings in accord with our opinion.

On 27 January 1954 the Clerk of the Superior Court of New Hanover County entered an order by consent removing this action from the Superior Court of New Hanover County to the Superior Court of Wake County.

At the March Civil Term (A) 1954 of Wake, Judge Fountain, upon motion of the plaintiff, issued a writ of *certiorari* directing that the defendants certify forthwith to the court the application of plaintiff to take the bar examination in August 1953, and the record of all hearings, findings of fact, conclusions of law, orders and any other records now in their possession pertaining to such application for judicial review by the court, except the examination papers filled out by the plaintiff under Judge Harris' orders, but not graded by the defendants. The defendants promptly obeyed said writ.

The transcript of the proceedings certified by the defendants was read to the court. Plaintiff's application filled out by him in May and early June 1953, to be permitted to take the examination in August 1953 for admission to practice law, set forth these salient facts in respect to residence. He was born in Charleston, South Carolina, 5 January 1925, where he lived until October 1925. From October 1925 until 30 May 1931, he lived in Montgomery, Ala.; from 1 June 1931 until 14 December 1932, in Savannah, Ga.; from 15 December 1932 until 10 July 1942, in Dothan, Ala. (graduating from the High School there in 1942); from 11 July 1942 until 15 July 1943, in Jacksonville, Fla.; from 15 July 1943 until 1 Sept. 1944, in Tampa, Fla.; from 1 Sept. 1944 until 1 Feb. 1945, in Augusta, Ga.; from 1 February 1945 to date in Wilmington, North Carolina, and that Wilmington is his home and residence. His application further stated that he attended the University of South Carolina six years, receiving a B. S. Degree in 1949 and an L. L. B. Degree in 1950, and was licensed to practice law in South Carolina in 1950. His application further stated that he served in the U. S. Navy from May 1942 until Sept. 1946, and that he had been employed in the Office of Chief Counsel, Office of Price Stabilization, Washington, D. C. from March 1951 to March 1953. His application further says his parents' residence is Wilmington, North Carolina.

On 8 June 1953 the plaintiff was notified by letter by the secretary of the defendants that it appeared the plaintiff was not at this time, nor will be by June 15, a *bona fide* citizen and resident of North Carolina for one year preceding such date. On 21 July 1953 the plaintiff was advised by letter that the defendants desired to have him appear before them as a Board on 25 July 1953 at 9:30 a. m. The plaintiff appeared with his lawyer R. P. Upchurch, and testified in his own behalf. This is a sum-

mation of what he said in respect to "residence." He is single, and his domicile is in Wilmington with his parents; his automobile license is there; his hunting license is there; his vacations were spent there. On the records of the University of South Carolina Law School his residence is given as Wilmington, North Carolina. He accepted employment in Washington, D. C. to learn administrative law, and told them he could not work there over two years. He did not apply to take the North Carolina bar examination in 1951 and 1952 because he was working. His parents moved to Wilmington, North Carolina, 1 February, 1945.

On 27 July 1953 plaintiff was notified by letter by the secretary of the defendants that his application for admission to take the examination in August 1953 had been rejected, as he failed to satisfy the defendants as to his citizenship and residence as contemplated under Rule Five, and the money he paid to take the examination was returned to him.

On 28 July 1953 plaintiff by telegram requested a rehearing before the defendants, which was granted. On 3 August 1953 the plaintiff appeared again before the defendants with his counsel. He filed an affidavit, and testified orally. This is the substance of his evidence as to "residence." He enlisted in the U. S. Navy in Sept. 1943 when his parents were living in Tampa, Florida. On 1 February 1945 his parents moved to Wilmington, North Carolina. He served in the Navy until September 1946. On 1 August 1945 he returned to his parents' home in Wilmington on terminal leave from the Navy, and resided there until the middle of September 1946, when he enrolled as a student in the University of South Carolina, and remained there until September 1950. He then returned to his parents' home in Wilmington, and stayed there until 1 March 1951, when he accepted employment in Washington, D. C. He terminated this employment 15 March 1953, and returned to his parents' home, where he stayed until 8 June 1953 when he came to Raleigh to take a "refresher course" for the bar examination. He never had a domicile or legal residence, or home except with his parents, and has never intended or contemplated having a legal home other than North Carolina.

His income was more than $1,000.00. He did not file a North Carolina State Income Tax Return for 1951 and 1952. He filed a Federal Income Tax Return in Baltimore, Md.,—not in Greensboro. He did not pay poll tax in North Carolina in 1951, 1952 and 1953.

In respect to "residence" the defendant board made the following order dated 25 July 1953: "It appearing to the Board that William Samuel Baker, Jr. has filed certain papers with the Board as his application to take the examinations of this Board in August, 1953, and it appearing further that the said Baker was requested by this Board to appear in connection with his application and he did so appear before this Board on July 25, 1953, and it further appearing that said Baker was born in

Charleston, South Carolina, in 1925 and since that time has been a resident of various communities in the States of Alabama, Georgia and Florida, and it further appearing that he gives his residence at the present time and since 1946 as the City of Wilmington, North Carolina, but also shows that he has for a period of March, 1951, to March, 1953, been employed in and resided in the City of Washington, D. C., and has been engaged as an attorney at law, he having been admitted to the Bar in South Carolina in 1950, and that for a period of at least nine months during the one year period next preceeding (*sic*) June 15, 1953, has resided in the City of Washington, therefore, upon the application made to the Board and statements made in personal appearance before the Board, it appears that he has not been both a citizen and resident of the State of North Carolina for a period of one year next preceeding (*sic*) June 15, 1953, and the Board finds as a fact that he has not been both a citizen and resident of North Carolina for twelve months next preceeding (*sic*) June 15, 1953, and therefore has not met the requirements of Rule 5 of the Board and it is thereupon ordered that his application to this Board to take the 1953 examinations be and the same is hereby denied."

On 3 August 1953 the defendant Board made the following order: "Upon said rehearing the Board finds the following facts: That the applicant first heard prior to the examination of 1950 from the Secretary of the Board that his application should be filed before June 15 of that year and because he had not done so, applicant made no further attempt to stand that examination. That applicant first read the rules of the Board in May, 1953. That the Board had previously given examinations for which he might have applied in August, 1950, March, 1951, August, 1951, and August, 1952, but that applicant failed to apply to stand said examinations. That while applicant contends he was a resident of the State of North Carolina for one year prior to June 15, 1953, he was engaged in the practice of law for two years and 15 days prior to March 15, 1953, in the District of Columbia. That during said time applicant filed his federal income tax return with the collector of Internal Revenue at Baltimore, Maryland. That he filed no state income tax with the Commissioner of Revenue of North Carolina for the years 1951 and 1952, nor did he pay a poll tax to the State of North Carolina for the years 1951, 1952 and 1953, nor did he list the same. That the applicant is a single man and owns and maintains no home of his own in the State of North Carolina and he became of age on January 5, 1946. That upon consideration of the foregoing facts and orders heretofore entered by the Board in this case, it is considered and ordered that the order in this case made July 25, 1953, be affirmed for the reason that the applicant has failed to satisfy this Board that he has been a citizen and resident of the State of North Carolina for one year prior to June 15, 1953, as required by the rules of the Board . . ."

Judge Fountain signed a judgment adjudging that the evidence before the Board of Law Examiners on 25 July 1953 and on 3 August 1953 was sufficient to support the orders of the Board and the findings of fact upon which said orders of 25 July 1953 and of 3 August 1953 were based, and that said orders are in all respects sufficient in law and valid.

The plaintiff excepted to the judgment and appealed, assigning error.

*R. P. Upchurch for Plaintiff, Appellant.*
*Bennett H. Perry for Defendants, Appellees.*

PARKER, J.　This case was predicated, and tried in the former appeal on the theory that the plaintiff had shown by evidence compliance with Rule Five of the Rules Governing Admission to Practice of Law in North Carolina.　These rules are printed in 208 N.C. 857, *et seq.;* in 221 N.C. 608, *et seq.;* and in G. S. N. C., Vol. 4, p. 65, *et seq.*　In his brief of 39 pages in the former appeal, he did not question the constitutionality of the statute giving authority to the defendant Board of Law Examiners to make Rule Five.

We held in our former opinion that there was in effect at that time no provision for an appeal from the Board of Law Examiners, and therefore under G. S. 1-269 authorized a writ of *certiorari "to the end that the record of pertinent proceeding in respect to question of rule applied in determining residence of plaintiff within the State in connection with his application for bar examination, may be judicially reviewed."*　It clearly appears by the language of our former opinion, which we here emphasize, that the matter was to be heard in the Superior Court solely upon the Record, and the hearing should be limited to the *question* of residence of plaintiff within the State in connection with his application to take the examination.　Therefore, many interesting questions discussed in plaintiff's brief are not relevant—*e.g.* his exceptions to the refusal of the trial judge to permit him to introduce in evidence his oral examination of Edward L. Cannon, Secretary of the Board of Law Examiners of the State, before Judge Fountain.

For the first time on this appeal the plaintiff seeks to raise the constitutionality of that part of Ch. 210, Public Laws of North Carolina 1933 (now codified as G. S. N. C. 84-15 *et seq.*), by virtue of which Rule Five was adopted and approved, on the ground that the General Assembly was without power to delegate its lawmaking power.　The plaintiff contends that Rule Five is void, which leaves C. S. 196 in force, and that under that section the sole requirement as to residence of an applicant to take an examination to practice law in this jurisdiction is that the "applicant must be a *bona fide* resident of North Carolina."

C. S. 196 has been deleted from G. S. N. C. 1943—see G. S. N. C. 1943, Vol. 4, p. 130, where it is said C. S. 194-196 superseded by G. S. N. C. 84-24. C. S. 196 not being contained in General Statutes of North Carolina 1943 was thereby repealed by virtue of G. S. N. C. 164-2; it not coming within the exceptions and limitations set forth thereafter in Ch. 164, G. S. N. C. See *Kirby v. Board of Education,* 230 N.C. 619, 55 S.E. 2d 322.

An appeal *ex necessitate* follows the theory of the trial. *In re Parker,* 209 N.C. 693, 184 S.E. 532; *Sawyer v. Staples,* 224 N.C. 298, 29 S.E. 2d 892; *Lyda v. Marion,* 239 N.C. 265, 79 S.E. 2d 726. As the plaintiff did not raise the question of constitutionality of that part of Ch. 210, Public Laws of 1933, giving the defendant Board of Law Examiners authority to make Rule Five, it may not be raised for the first time in this Court on the second appeal. *Bank v. Caudle,* 239 N.C. 270, 79 S.E. 2d 723; *Phillips v. Shaw, Comr. of Revenue,* 238 N.C. 518, 78 S.E. 2d 314; *Trust Co. v. Waddell,* 237 N.C. 342, 75 S.E. 2d 151; *S. v. Lueders,* 214 N.C. 558, 200 S.E. 22; 11 Am. Jur., Constitutional Law, Sec. 93.

A person does not have a natural or constitutional right to practice law; it is a privilege or franchise to be earned by hard study and compliance with the qualifications for admission to practice law prescribed by law. *Seawell, Atty. Gen., v. Motor Club,* 209 N.C. 624, 184 S.E. 540; 7 C. J. S., Attorney and Client, Sec. 4 (b). By virtue of its police power a state is authorized to establish qualifications for admission to practice law in its jurisdiction. *In re Applicants for License,* 143 N.C. 1, 55 S.E. 635. An attorney at law is a sworn officer of the court with an obligation to the public, as well as his clients, for the office of attorney at law is indispensable to the administration of justice. *In re Dillingham,* 188 N.C. 162, 124 S.E. 130; 7 C. J. S., Attorney and Client, Sec. 4 (a). The purpose of the statute creating the North Carolina State Bar was to enable the bar to render more effective service in improving the administration of justice, particularly in dealing with the problem of admission to the bar, and of discipling and disbarring attorneys at law.

The pertinent part of Rule Five is as follows: "Citizenship, Character, Age, Residence. Each applicant at the time of filing his application, must be a citizen of the United States, a person of good moral character, and must have been, for the twelve months next preceding the filing of his application, a citizen and resident of North Carolina . . ."

Whether the term "resident" as used in Rule Five means that "residence" is synonymous with "domicile" depends on the purpose of Rule Five, the nature of the subject matter, as well as the context in which the term is used. 28 C. J. S., Domicile, Sec. 2 (b); 17 Am. Jur., Domicil, Sec. 9.

The North Carolina Constitution provides in Art. VI, Sec. 2, as a prerequisite to the right to vote that an elector "shall reside in the State of North Carolina for one year and in the precinct, ward or other election district in which he offers to vote four months next preceding the election." This Court has held "without variation that residence within the purview of this constitutional provision is synonymous with domicile, denoting a permanent dwelling place to which the party when absent, intends to return." *Owens v. Chaplin,* 228 N.C. 705, 47 S.E. 2d 12 (where the authorities are cited). In *Roberts v. Cannon,* 20 N.C. 398, *Gaston, J.,* speaking for the Court said: ". . . by a residence in the county the Constitution intends a domicil in that county."

*Hannon v. Grizzard,* 89 N.C. 115, was a *quo warranto* proceeding. At a regular election held in November 1882 in and for Halifax County, the relator was chosen by a majority of the votes cast to the office of register of deeds, and it was so declared by the county canvassers. The board of county commissioners refused to permit him to qualify upon the ground of his want of qualification required by the Constitution in that he had not "resided in the State twelve months next preceding the election, and ninety days in the county." The relator was in the service of the federal government at Washington, D. C., as watchman under the Treasury Department, but continued to pay poll tax and vote in Halifax County, and spent a part of each year at his home in Halifax. This Court held that his constitutional residence remained unchanged in Halifax.

*Winborne, J.,* speaking for the Court in *In re Hall,* 235 N.C. 697, 71 S.E. 2d 140, said: ". . . as a general rule, a student, although an adult, does not acquire a legal domicile at an educational institution where he resides with the ultimate intention of returning to his original home. 28 C. J. S., p. 28, Domicile 12 (g) 3." But an adult student, independent of parental control and support, may acquire a domicile at the place where a university or college is situated, if he regards the place as his home, or intends to stay there indefinitely, without any intention of resuming his former home. *Berry v. Wilcox,* 44 Neb. 82, 62 N.W. 249, 48 Am. St. Rep. 706; 28 C. J. S., Domicile, p. 29; 17 Am. Jur., Domicil, Sec. 74.

"The rule is settled that a student who goes to a college town with the intention of remaining there simply as a student, and only until his education is completed, and who does not change his intention does not acquire a domicil there." 17 Am. Jur., Domicil, Sec. 74. See also Anno. 37 A.L.R. 138.

If we should hold that the term "resident" as used in Rule Five, means that a person is a resident of the place where he has his actual place of abode, it would mean that a young man born, raised and domiciled in North Carolina, who went to Charlottesville, Virginia, with the intention

of remaining there as a student in the Law School of the University of Virginia, and only until his education was completed, and who does not change his intention, upon his graduation in June could not take the examination to practice law in North Carolina the following August. Such a narrow construction is not consistent with the purpose of Rule Five. In our opinion, the term "resident" as used in Rule Five means that "residence" is synonymous with "domicile."

One may be a resident of one state, although having a domicile in another. *Wheeler v. Cobb*, 75 N.C. 21; *Sheffield v. Walker*, 231 N.C. 556, 58 S.E. 2d 356; *Penfield v. Chesapeake, O. & S. W. R. Co.*, 134 U.S. 351, 33 L. Ed. 940; 17 Am. Jur., Domicil, p. 594.

The burden of showing that he had the qualifications to comply with the requirements of Rule Five rests upon the plaintiff. *In re Farmer and Duke, Applicants for License*, 191 N.C. 235, 131 S.E. 661; *Spears v. State Bar*, 211 Cal. 183, 294 P. 697, 72 A.L.R. 923 and Anno.; *Rosencranz v. Tidrington*, 193 Ind. 472, 141 N.E. 58, 28 A.L.R. 1136 and Anno.; 7 C. J. S., Attorneys at Law, p. 717.

If the proof offered by the plaintiff failed to satisfy the defendant Board of Law Examiners that he had the qualifications required by Rule Five, it was their duty to deny his application to take the examination in August 1953. *Spears v. State Bar, supra.*

In our opinion, there is sufficient competent evidence to support the detailed findings of fact made by the defendant Board of Law Examiners that the plaintiff has not been for the twelve months next preceding the filing of his application a citizen and resident of North Carolina, as required by Rule Five. Although one member of the defendant Board during the hearing stated that he considered residence to mean actual residence in North Carolina, it seems clear that the orders of the defendant Board of Law Examiners, acting as a Board, considered residence as used in Rule Five to be synonymous with domicile, for otherwise they would not have found that during the years 1951 and 1952 the plaintiff filed no State income tax return, and for the years 1951, 1952 and 1953 paid no poll tax. It is significant that the plaintiff offered no evidence that he ever registered to vote or voted in North Carolina. The findings of fact made by the defendant Board amply sustain the Board's conclusion that the plaintiff has not met the requirements of Rule Five, and their orders denying his application to take the 1953 examination. The Record is bare of anything tending to show that the findings and rulings of the defendant Board of Law Examiners are arbitrary or capricious, or that the same are erroneous and contrary to law, as asserted by the plaintiff. The Record shows that the plaintiff and his attorney were granted hearings before the defendant Board on 25 July and 3 August 1953.

The plaintiff in his brief contends that the action of the defendant Board denied him due process of law and the equal protection of the law in violation of the 14th Amendment to the U. S. Constitution. Even if that question were presented for decision, the Supreme Court of the United States in *Bradwell v. Illinois,* 83 U.S. 130, 21 L. Ed. 442 (quoted with approval in *Re Lockwood,* 154 U.S. 116, 38 L. Ed. 929) held that the right to practice law in the State Courts is not a privilege or immunity of a citizen of the United States within the meaning of the first section of the 14th Amendment of the Constitution of the United States. See interesting article "Myra Bradwell: First Woman Lawyer." 39 A.B.A. Journal 1080 (1953).

The plaintiff contends in his brief that the action of the defendant Board of Law Examiners violated his rights under Art. I, Sec. 17, of the North Carolina Constitution. Even if that question were presented for our decision, we know of no rights of plaintiff given under that part of our Constitution or any other part that have been violated; and plaintiff's counsel has cited us no case in our Reports to support his assertion.

In the former opinion in this case we said: "In this connection the Court will not review or reverse the exercise of discretionary power by an administrative agency except upon a showing of capricious, unreasonable or arbitrary action, or disregard of law." This statement of the law is in accord with the authorities elsewhere. 7 C. J. S., Attorney and Client, p. 719; *Spears v. State Bar, supra;* 42 Am. Jur., Public Administrative Law, Sec. 209 *et seq.,* where hundreds of cases of the U. S. and State Courts are cited.

In the former opinion we stated that plaintiff's complaint, liberally interpreted, seems to allege that the Board of Law Examiners acted under a misapprehension of what is in law "residence" within the purview of Rule Five. On the former appeal the record evidence of plaintiff's application, with supporting papers, to take the examination, and the evidence before the Board of Law Examiners was not before us. All that evidence is now before us on this appeal.

From what we have said above, it is our opinion that the Board "acted in the true light of the meaning of the term resident," and did not act under any misapprehension as to its meaning.

It may not be amiss to add that by virtue of Ch. 1012, Session Laws 1953, that in January 1954 Rule 20 in respect to Appeals, was added to the Rules and Regulations of the North Carolina State Bar. This rule has been published in 239 N.C. 718.

The General Assembly of North Carolina has entrusted to the Board of Law Examiners of the State of North Carolina by statutory enactment the duty of examining applicants and providing rules and regulations for admission to the Bar. G. S. N. C. 84-24.

The findings of fact made by the Board of Law Examiners supported by the evidence are conclusive upon us as a reviewing Court, and are not within the scope of our reviewing powers. 42 Am. Jur., Sec. 211, where great numbers of cases from the Federal and State Courts are cited. The fact that a statute provides for the judicial review of administrative decisions makes it evident that such decisions are conclusive as to properly supported findings of fact. *Social Security Bd. v. Nierotko,* 327 U.S. 358, 90 L. Ed. 718.

The conclusiveness of findings of fact by an administrative agency is not affected by the fact a minority of its members disagreed. *Baltimore & O. R. Co. v. U. S.,* 298 U.S. 349, 80 L. Ed. 1209; *Interstate Commerce Commission v. Delaware, L. & W. R. Co.,* 220 U.S. 235, 55 L. Ed. 448.

This Court cannot substitute its judgment for that of the Board of Law Examiners in making findings of fact, and when the evidence warrants the conclusions of the Board of Law Examiners, we cannot review. *National Labor Relations Board v. Va. E. & P. Co.,* 314 U.S. 469, 86 L. Ed. 348; *U. S. v. New River Co.,* 265 U.S. 533, 68 L. Ed. 1165; 42 Am. Jur., Public Administrative Law, pp. 632-3.

*Quaere:* Can an examination given under compulsion of a void order or orders have any possible life or virtue?

It is ordered that the judgment of the lower court be
Affirmed.