**Mable Louise ADGER, Appellant (Defendant below),**

v.

**The STATE of Wyoming, Appellee (Plaintiff below).**

**No. 4779.**

Supreme Court of Wyoming.

Sept. 11, 1978.

Gerald M. Gallivan, Director, Wyoming Defender Aid, and John R. Green, Student

Director, Wyoming Defender Aid, Laramie, for appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., Richard H. Honaker, Asst. Atty. Gen. and Sharon A. Fitzgerald, Legal Intern, Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

GUTHRIE, Chief Justice.

Mable Louise Adger appeals her conviction of the crime of assault with a deadly weapon and the sentence therefor.

Defendant's major contention on appeal is that the trial court's refusal to grant her pretrial motions for continuance did not permit her attorneys adequate time in which to prepare her defense and amounted in substance to a deprivation of her right to effective assistance of counsel guaranteed by both the State and Federal Constitutions. Because of our disposal, it is unnecessary to reach the other questions.

The question presented herein is not similar to that found in many cases raising the question of ineffective assistance of counsel because we have no complaint of counsel's lack of professional skill during the course of the trial—instead the focus is on the effect of the trial court's exercise of its discretion in denying such continuance.

Defendant was brought before the justice of the peace on May 27, 1976, upon a complaint charging two counts of assault with a deadly weapon. She was advised of her right to retain counsel or her right to request appointment of counsel if she were unable to retain one. She advised the justice of the peace that she had an attorney in Casper. The judge enjoined her to notify him immediately if she were unable to obtain the services of a lawyer and emphasized that in the event some counsel were appointed to represent her that they should have some time to properly prepare her defense.

At her preliminary hearing defendant was represented by an attorney who advised the court that he was making an appearance on behalf of a Casper attorney who had been retained by defendant, although he did advise the court that he was appearing "specially" and intended to limit his appearance to the preliminary hearing. Thereafter an information was filed and defendant was arraigned before the district court on July 29 and appeared at that time without her attorney. She informed the judge that she had retained a lawyer and had paid him $50 for services rendered in connection with her preliminary hearing. She explained that the attorney would be unable to attend her arraignment and had instructed her to have the court appoint an attorney if it were necessary to have one present. She was advised of her right to have such an attorney at her arraignment but was willing to continue the proceedings and agreed to waive her right to the presence of an attorney at the arraignment, and she entered a plea of not guilty. The court then advised her that she had two weeks, or until August 13, in which to file any motions and that the case would be set for trial on August 30. The judge emphasized defendant's responsibility to obtain an attorney sufficiently in advance of the trial to allow for adequate preparation and warned her of probable consequences of dilatory conduct, and stated that the case would go to trial even if she were not ready. After further colloquy, the court again asked her if she wished to hire her own attorney and to give up her right to have one appointed at public expense, and she answered affirmatively. After having the information read and her entry of a formal plea of not guilty, the judge requested her to immediately contact and retain the lawyer of her choice and have that lawyer notify the court and file his appearance. The court again insisted that she notify it if her attempts to retain counsel were not successful so that it could appoint an attorney. Defendant agreed to these conditions. The judge again warned her he would be severe if she failed to comply therewith. On August 12 defendant called the judge by telephone and informed him an attorney would represent her at the trial. The attorney later tele-

phoned the judge on August 16 to advise the court that he would not be representing defendant unless she paid the retainer on that day. When the judge made inquiry as to his definite status, the attorney said he expected to be paid and *was not out of the case.* The judge on that date telephoned the public defender's office and advised them he was not assigning the case to them but wanted them to know of the situation if it were necessary to make an appointment at the last minute. On August 18 or 19 the attorney advised the judge that he and defendant had made arrangements for another person to pay the retainer, expressing a satisfaction with the plan, but again refusing to make a formal entry of appearance in the case. On August 25—only 5 days before the trial setting—the judge called the attorney to inquire if he was in the case. The attorney was noncommittal and alluded to difficulties in meeting defendant so that she could pay the fee. The court then immediately instructed the Natrona County sheriff's office to find defendant and insist that she meet with her attorney immediately and resolve the dispute. The attorney phoned the judge that evening to express his optimism that the fee would be paid but was again indefinite as to the status of his representation. The judge advised the attorney that he was being unfair to defendant inasmuch as he was creating a risk of taking her up to the time of the trial and dropping her, in which case she would be forced to go to trial with inadequately prepared counsel. That evening the attorney also telephoned the Fremont County Public Defender's office, and indicated that *probably* he would not be handling the case for defendant, although he was again not definite. He gave them a brief summary of the case and what he had done in terms of work product, and assured them he would contact defendant that evening and instruct her to call them. Defendant did call the public defender's office, and they requested that she come to Lander so that they could consult with her, and on August 26 two members of the public defender's staff were appointed to represent defendant.

On August 27 defense counsel filed a written motion for continuance, asserting that three days, two of which fell on a weekend, were insufficient to allow for adequate preparation for trial. The trial judge denied the motion in chambers but ordered the prosecution to make a complete disclosure of all information regarding the case, including an inculpatory statement which defendant gave to the Riverton Police Department following her arrest. The court also offered and did provide its assistance to locate witnesses over the weekend. On the morning of the trial (August 30) defense counsel renewed its motion for continuance, stating that they did not have adequate time to prepare themselves to protect her interests in the case, to properly present defenses which she may have, and to properly cross-examine the State's witnesses. Counsel presented no factual information showing how more time would improve her defense but discussed specific areas where preparation was insufficient, some of which will be mentioned later in this opinion. The trial judge, while expressing sympathy for the public defender's position, denied the motion, stating defendant's situation was one of her own making.

 A criminal defendant's right to effective counsel is inviolate and the court has a duty to provide such counsel. This duty "is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case," *Powell v. State of Alabama,* 287 U.S. 45, 53 S.Ct. 55, 65, 77 L.Ed. 158, 84 A.L.R. 527; *Avery v. State of Alabama,* 308 U.S. 444, 60 S.Ct. 321, 322, 84 L.Ed. 377; *United States ex rel. Washington v. Maroney,* 3 Cir., 428 F.2d 10, 13. The right of assistance by counsel necessarily includes a reasonable and adequate time for counsel to prepare, *Klockenbrink v. State,* Alaska, 472 P.2d 958, 965; *State v. Miller,* 111 Ariz. 321, 529 P.2d 220, 221; *People v. O'Neill,* 185 Colo. 202, 523 P.2d 123, 124.

We have earlier held that a motion for continuance based upon lack of time to prepare for trial is within the discretion of the

trial court, *Ash v. State,* Wyo., 555 P.2d 221, 225, and in that case upheld the action of the trial court in appointing an attorney who had an acquaintance with the incident the morning of the trial. Additionally the trial judge had insisted that the lawyer appointed consult with the defendant the day before even though he had no definite knowledge of the defendant's desire for an attorney in that case until 8:30 the morning of the trial.

Among other facts which distinguish this case from *Ash* is that in this case the judge was cognizant of defendant's desire to be represented by a certain attorney from the date of the preliminary hearing and she in no way waived or surrendered such right. This is entirely unlike *Ash,* where we held that defendant by his actions had waived the right to appointment of counsel until the morning of the trial.

■ The Supreme Court of the United States has consistently avoided the adoption or invocation of any presumption or any per se rule to aid in the disposal of the question of determination of adequate time being allowed for counsel to prepare for the trial of a case. Beginning with *Avery v. State of Alabama,* supra, decided in 1939, we find that Court calling attention to the fact that the Constitution does not contemplate any specific period of time required for the appointment of counsel and that the case must be decided in light of its particular facts. This is followed by *Ungar v. Sarafite,* 376 U.S. 575, 84 S.Ct. 841, 850, 11 L.Ed.2d 921, rehearing denied 377 U.S. 925, 84 S.Ct. 1218, 12 L.Ed.2d 217 (1964), which holds that not every such denial for continuance of a case "violates due process even if the party fails to offer evidence or is compelled to defend without counsel," 84 S.Ct. at 849, and additionally points out that "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied," 84 S.Ct. at 850, citing *Nilva v. United States,* 352 U.S. 385, 77

S.Ct. 431, 1 L.Ed.2d 415, and other authority. In *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 1982–1983, 26 L.Ed.2d 419, rehearing denied 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94 (1970), the Court specifically sets out its refusal "to fashion a *per se* rule requiring reversal of every conviction following tardy appointment of counsel or to hold that, whenever a habeas corpus petition alleges a belated appointment, an evidentiary hearing must be held to determine whether the defendant has been denied his constitutional right to counsel." In light of these holdings, this court feels compelled to do as the United States Supreme Court has done in its approach to these cases to make our disposal based upon the factual situation which appears in each case without reliance upon per se rules or assumed presumptions. As expressed in *United States v. Uptain,* 5 Cir., 531 F.2d 1281, 1285–1286:

" * * * This issue must be decided on a case by case basis in light of the circumstances presented, particularly the reasons for continuance presented to the trial court at the time the request is denied. [Citations.]"

See further, *United States v. Little,* 8 Cir., 567 F.2d 346, 348, and *United States v. Rothman,* 7 Cir., 567 F.2d 744, 747.

■ However, even though we do recognize the force of the discretion of the trial court in such matters, this court is not relieved from a responsibility for a thorough examination of the "particular circumstances appearing in the record," *United States v. Johnson.* 5 Cir., 417 F.2d 332, 333; and if this court were to do otherwise it would involve a mere rubber stamping of the trial court's decision, which of course can never be our function in matters affecting constitutional rights. Our disposal hereof is necessarily based upon the peculiar factual situation in this case and it is our conclusion that the defendant was deprived of adequate legal representation.

Most, if not all, of this confusion is attributable to the conduct of an attorney. Although the record does not reflect his formal appearance on any pleadings or motions filed on behalf of defendant, nor does

it show any formal written entry of appearance in the case which was executed by him, the record does demonstrate that he did receive $50 for services in connection with defendant's preliminary hearing; and even though he sought to limit his appearance to that stage of the proceedings only, in several instances he did represent to the trial court that the question of his continued employment depended upon payment from defendant. At no time during this entire period did he ever inform the court that he was out of the case and refused on several instances to make such a definite statement. It is doubtful that if the trial judge had not intervened that defendant would have had any counsel appearing for her on the morning of the trial. We do not believe, in fairness to defendant, that under these circumstances the attorney had no obligation to her or to the court, but it does appear that by his own conduct and his persistent representations that he made the equivalent of a formal entry of appearance and was bound to see that the interests of his client were protected. An attorney cannot, by the mere artifice of withholding his signature, play fast and loose with an uninformed client or a judge who apparently improvidently relies upon such lawyer. He cannot be heard to say he has made no appearance therein. The trial judge in this case offered this attorney a clear and proper choice on August 16, when he asked if he was in or out of the case, and it would appear that at that time, in all fairness, counsel, if he was not committed to an appearance, should have asked permission to withdraw so that proper counsel might have been appointed for defendant. Unless and until counsel had properly withdrawn, the trial court could not have removed him or appointed the public defender because of defendant's right to be heard through the counsel of her choice, *Chandler v. Fretag,* 348 U.S. 3, 75 S.Ct. 1, 4, 99 L.Ed. 4; *Gandy v. State of Alabama,* 5 Cir., 569 F.2d 1318, 1322–1323.

█ There may be some mistaken view that the payment of a fee to a lawyer is a sine qua non to the establishment of an attorney-client relationship. This is simply not correct. Although it is said to lie in contract, its existence may be implied. It has been said that said relationship does exist where the advice and help of a lawyer is sought and is received, *Crest Investment Trust, Inc., v. Comstock,* 23 Md.App. 280, 327 A.2d 891, 902; *Kurtenbach v. TeKippe,* Iowa, 260 N.W.2d 53, 56. However, the factual situation herein reveals to the court that the attorney admits a retainer and employment but is really in effect asserting a contention which allows his withdrawal or nonappearance in default of the payment of some fee.[1] We find the discussion in the case of *Smith v. Bryant,* 264 N.C. 208, 141 S.E.2d 303, 305–306, one which should be called to the attention of the Bar:

> "Whether an attorney is justified in withdrawing from a case will depend upon the particular circumstances, and no all-embracing rule can be formularized. It is generally held, however, 'that the client's failure to pay or to secure the payment of proper fees upon reasonable demand will justify the attorney in refusing to proceed with the case.' *Gosnell v. Hilliard,* supra [205 N.C. 297, 171 S.E. 52] at 301, 171 S.E.2d at 54; 7 C.J.S. Attorney and Client § 110 (1937). Nevertheless, this does not mean that an attorney of record can walk out of the case by announcing to the court on the day of the trial that he has withdrawn because he has not been paid. An attorney not only is an employee of his client but also is an officer of the court. This dual relation imposes a dual obligation. *Roediger v. Sapos,* 217 N.C. 95, 6 S.E.2d 801. To the client who refuses to pay a fee the attorney must give specific and reasonable notice so that the client may have adequate time to secure other counsel and so

---

1. See, *Argo v. Wiman,* D.C.Ala., 209 F.Supp. 299, 305, affirmed 5 Cir., 308 F.2d 674, certiorari denied 371 U.S. 933, 83 S.Ct. 306, 9 L.Ed.2d 270, for further comment upon failure of counsel to appear because of nonpayment of an

agreed fee. See further, Rule 13, Uniform Rules of District Courts of Wyoming, and DR 2–110(A)(2), Code of Professional Responsibility.

that he may be heard if he disputes the charge of nonpayment. To the court, which cannot cope with the ever-increasing volume of litigation unless lawyers are as concerned as is a conscientious judge to utilize completely the time of the term, the lawyer owes the duty to perfect his withdrawal in time to prevent the necessity of a continuance of the case. 'An attorney at law is a sworn officer of the court with an obligation to the public, as well as his clients, for the office of attorney at law is indispensable to the administration of justice,' Parker, J. in *Baker v. Varser,* 240 N.C. 260, 267, 82 S.E.2d 90, 95. 'The attorney's obligation crystallizes into one of *noblesse oblige,*' Comment, Attorney and Client—Withdrawal of Attorney, 18 N.C.L.Rev. 338, 344.

"As between the attorney and his client the relationship may ordinarily be dissolved in good faith at any time, but before an attorney of record may be released from litigation he must satisfy the court that he is justified in withdrawing. The first requirement for his withdrawal is proof of timely notice to his client. Obviously, written notice served on the client would be the most satisfactory evidence of compliance with this requirement. G.S. § 1–592. Mr. Rhoe's announced withdrawal at the time this case was called for trial was, of course, subject to the court's approval. On the facts disclosed by the record, Judge Braswell should have refused him such permission."

The trial court, in denying this motion for continuance, apparently took the view that this situation was one of defendant's making. With this we cannot agree. Her sole fault seems to be poverty—not in her lack of diligence but in her assessment of her financial ability to pay this attorney fee. We find little fault with defendant, who apparently was unable to understand the studied pattern of equivocation engaged in by counsel, which apparently seems to have also been accepted by the trial judge, at least until the time of his appointment of the public defender; and the trial court's acquiescence in these stalling actions contributed largely to the creation of this situation.

■ Appellant does not suggest that defense counsel herein lacked legal competence but rests solely on the claim that counsel had insufficient time to prepare an adequate defense. The defense made no opening statement and presented no defense as such, counsel alleging that their lack of preparation made this impossible. A further examination of the record, as we suggested was proper in *Ash,* supra, reveals the sole defense of this defendant rested in the cross-examination of the State's witnesses to whom counsel had not talked. It will be observed in passing that such cross-examination, as might well be expected, yielded little by way of defense. It is rather universally accepted that cross-examination of witnesses to whom counsel has not talked is rarely productive of any benefit and mounts a constant threat of danger to the interest of their client. This problem is demonstrated by the fact that there were eleven witnesses called by the State—only three of whom had testified at the preliminary hearing and whose testimony was available from the transcript of that hearing. Because of the advent of the weekend and the shortness of time, and the fact some of the witnesses were out of town, counsel were unable to interview any of these witnesses except the witness Boggess, the alleged victim, who testified to nothing of value and was strictly adverse to the State. There were, however, three other witnesses who were not subpoenaed by the State who were in the car with defendant and the victim, at least during part of the trip from Rock Springs to the place of this incident, and the record is unclear as to whether they may have seen this transaction. In spite of the trial judge's help, counsel were unable to talk to any of these three witnesses, and there is nothing in the record which would give us any idea whether these witnesses' stories might have value. In absence of an interview with them, it would be mere speculation.

There is another problem which might not ordinarily seem of great significance, but which strangely enough, because of the trial court's remarks, mounts in importance. Neither of counsel was able to go to the scene and examine the surroundings, but the trial judge, in commenting upon an offered exhibit in the form of a picture, suggested that if the holes appearing in the drain pipe in this picture were bullet holes, there would be no way that defendant could have been said to have been shooting at Boggess. We express no view on the possible significance of these holes but do suggest it is illustrative that an examination of the scene might well have been beneficial to defendant. An examination of the record in connection with the admission into evidence of defendant's statement reveals a most confused picture of the position of defendant's counsel with reference to the admissibility thereof. Without even suggesting criticism, it may well be suggested that some preparation by defendant's counsel would have resulted in a different handling of this question. We see no advantage to further detail our views of this trial but will rest upon the statement that we cannot, as we did in *Ash,* say that this case was "well tried and sharply contested," 555 P.2d at 226.

It is our view, therefore, that the trial court committed error in allowing defendant's retained counsel to withdraw from this case, or in the event he so chose to do he should have granted a continuance as sought in this case.

Reversed and remanded for new trial.

ROSE, Justice, specially concurring, in which McCLINTOCK, Justice, joins.

I, of course, concur with the majority's conclusion that it was reversible error to deny the appellant's motion for continuance. There is no question in my mind that the denial of this motion amounted to a deprivation of appellant's constitutional right to effective assistance of counsel. In this vein, I would say again what I said in my dissent to the decision in *Ash v. State,* Wyo., 555 P.2d 221, 232, reh. den. 560 P.2d 369:

". . . [N]o lawyer can adequately prepare his client's defense in the time allotted to the defense attorney here in a way which would assure a defendant *effective assistance of counsel.* . . ." [Emphasis in original text]

I cannot agree, however, with the court's attempt to distinguish the facts in this case from the facts in *Ash v. State,* supra, thereby justifying the conclusions reached in the *Ash* decision. For me, both situations indicate a deprivation of a defendant's right to effective assistance of counsel. See, *Ash v. State,* supra, 560 P.2d 369 (McClintock, Justice, dissenting, in which Rose, Justice, joins).

Furthermore, I am troubled by the absence of ascertainable standards which can be utilized for purposes of guidance in future cases. As I view the majority opinion, it embraces a case-by-case approach, in which the defendant's due-process rights are determined by a standard which asks whether the case—in which counsel is not appointed until shortly before trial—was "well tried and sharply contested." The majority finds that the test was not satisfied in this case because, (1) appellant's cross-examination of state witnesses was not very fruitful due to the lack of time to conduct interviews; (2) appellant's counsel did not have time to view the scene of the alleged crime; and (3) appellant's counsel's position on the admissibility of a statement was confusing. Absent from the majority opinion is any discussion of the *Ash v. State,* supra, requirement that there be a "clear showing of manifest injustice" by virtue of the denial of a continuance. Also absent is any reference to the *Ash v. State,* supra, definition of "ineffective counsel" which embraced concepts of mockery, sham, and farce. It seems, then, to me that these two majority opinions leave us groping for standards by which we may judge and test a defendant's assertion that he has been denied his constitutional right to effective assistance of counsel.

In an effort to furnish useable standards which recognize the defendant's right to

effective assistance of counsel and to a fair trial, I am compelled to align myself with an approach which would relieve the defendant of the burden of proving a constitutional violation under circumstances like those present here. *Ash v. State,* supra, 560 P.2d at 370–372. See, *United States v. DeCoster,* 159 U.S.App.D.C. 326, 487 F.2d 1197; *Garland v. Cox,* 4 Cir., 472 F.2d 875; and *Martin v. Commonwealth of Virginia,* 4 Cir., 365 F.2d 549. When counsel is not appointed until shortly before trial, the constitutional violation should be presumed, and the state required to prove beyond a reasonable doubt that the violation was harmless. See *United States v. DeCoster,* No. 72–1283, slip op. at 24–25 (D.C.Cir. Oct. 19, 1976) known as *DeCoster II.* While this standard has been criticized (*Moore v. United States,* 3 Cir., 432 F.2d 730), I view it as absolutely necessary in situations where it is virtually impossible to know how the defendant was affected by the belated appointment of counsel. The majority points to three areas which were *possibly* affected, but—in reality—it must be conceded that no one knows whether there were *actual* effects. This is why there is a need for a presumption of a violation—with inherent prejudice flowing therefrom. Admittedly, it would be difficult for the state to negate this presumption—but, the concern must remain focused upon the avoidance of penalizing the defendant in those circumstances where there has been a failure to provide him with the *opportunity* to prepare, with the inevitable consequential denial of effective assistance of counsel.

Absent from my discussion of what I view to be the proper standards is any reference to who is at fault for bringing on the circumstances which result in a lack of adequate time to prepare for trial. For me, to indulge in a fault-seeking search followed by an indictment of a judge, counsel or defendant, is an exercise in irrelevancy. We should only be concerned with whether the defendant's right to a fair trial has been denied, not with how the denial came to pass. There may or may not be conduct in this case which warrants referral to the Grievance Committee—I don't know—but that is not the point! And, I will not join in a search for the magical number which could be considered to be the minimum number of days before trial which is required in order that there be adequate opportunity for preparation. That, indeed, may depend on the circumstances of individual cases.

My concern, then, is not with the result reached herein, but with the pattern it provides for the future. The great American jurist, Roscoe Pound, wrote of the problem which bothers me in this way:

"... The necessity of weighing not merely the grounds of its decision, but the exact words in which those grounds are expressed, with reference to their possible use in other cases and thus of foreseeing within limits their potential analogical applications, is perhaps the gravest of the burdens involved in the crowded dockets of modern American appellate courts. If it were not for the need of scrupulously careful formulation of their decisions with reference to other cases in the future, our appellate courts could despatch the business that comes before them with less than half of the effort which our system of precedents requires. As it is, one or both of the aspects of the court's function must suffer. Either consideration of the merits of the actual controversy must yield to the need of detailed formulation of a precedent that will not embarrass future decision, or careful formulation must give way to the demand for study of the merits of the case in hand." Pound, The Formative Era of American Law, at 120 (1938).

We must—if we can—attempt to fulfill both of these functions in cases which warrant such treatment. The present case calls for this kind of attention!! The protection of a defendant's right to a fair trial demands it!!!