ISAIAH H. SPEARS, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Where S. was tried for forgery, and convicted, and on the trial the note which he is alleged to have forged is not produced in evidence, and the testimony of the witnesses as to the forgery is inconsistent, loose and unsatisfactory, and where the defendant was tried on an information containing different counts charging separate offenses, growing out of entirely separate and distinct facts, and on the trial the defendant introduced testimony tending to prove for himself a good reputation for honesty and integrity, which was uncontradicted, a new trial should be had.

This case was decided by the court En Banc.

Writ of error to the Criminal Court of Record for Escambia County.

The facts in the case are stated in the opinion of the court.

*E. T. Davis, William Monroe* and *E. C. Maxwell,* for Plaintiff in Error;

*Park Trammell,* Attorney General, for the State.

HOCKER, J.—On the 13th of September, 1909, the County Solicitor of the Criminal Court of Record of Escambia County filed in that court at the September term, an information against Isaiah H. Spears, the plaintiff in error, containing one count in which Spears is charged with receiving and aiding in the concealment of one blanket, the property of Mattie Gus, of the value of $3.00, on the 15th of June, 1909. On the 18th of September, 1909, during said term the court made an order allowing the Solicitor to amend said information by adding two additional counts, in the first of which Spears is charged with falsely and fraudulently altering a promissory note on the 25th of March, 1909, executed to him by Delia Milner, by changing and altering said note from one of $50.00 to one of $150.00. In the second of said added counts Spears is charged with knowingly and fraudulently altering and publishing as true said forged note to the Escambia Realty Company, a corporation, and to one George Wentworth on the 26th of March, 1909. Said note is alleged to be dated the 12th of March, 1909. On the 23rd of September, 1909, the defendant Spears was arraigned and pleaded not guilty, and on the 24th of September, 1909, the trial was

had which resulted in a verdict of guilty on the second and third counts, the court having instructed the jury to acquit the defendant of the charge in the first count, on the ground that the evidence was not sufficient to sustain it. The defendant was sentenced to imprisonment in the county jail at hard labor for one year on the second count, and to three months on the third count. The judgment is here for review on writ of error. The defendant moved for a new trial on the ground, among others, that the verdict is contrary to the evidence.

Mr. Wentworth testified for the State, and said in substance that in March, 1909, Spears came to his office in Pensacola and sold him a note for $150.00 executed by Delia Milner to Spears on the 12th of March, 1909, due ninety days from date. The note was endorsed by Spears and had a deed attached in which Delia conveyed certain lots to Spears. The note was not paid at maturity, and about two months after it became due Mr. D. J. Cunningham came to witness and said Delia Milner had sold out to him and had gotten him to take up the note for $150.00 and another for $250.00. The note appeared regular on its face. Witness never heard of the note being forged until a few days before he testified he was summoned to Mr. Loftin's office.

Delia Milner testified for the State in substance that while she was in the jail charged with burning some houses belonging to one Brown, Spears came to see her and she employed him for $50.00 to get her a bond. She thought the note she gave him was for $50.00. She can read, but it was kinder dark in jail. She gave a deed to secure the note. She did not agree to give Spears a note for $150.00. Lawyer Parker came to the jail with Spears and brought some papers for her to sign. She sold the property to other parties. After the case against her was dismissed she went to Spears' office to see him and they were talking

about the fee he had charged her and the case was dropped, and he said the note was for $150.00, and she told him she thought it was for $50.00. She did not know until then that the note was for $150.00.

George W. Parker testified for the State in substance that Spears came to his office last March and asked him to go to the jail and take the acknowledgment of a paper. A note and a mortgage were joined together. They went to Delia Milner's cell and he read the note and mortgage to her and she signed both. The note was for $50.00. He took the mortgage to Lottie Young's cell and she witnessed it. Spears was present the whole time. The reason he remembers so well the note was for $50.00 is, because the next day he was over at Charles Johnson's and B. M. Hatton's office and one of them spoke about Spears getting a big fee—$150.00, and witness said that $50.00 was all the note called for. He guesses Delia Milner read the note and mortgage. She looked like she was reading. It was a mortgage that Delia Milner signed before him—they called it a mortgage, and witness thinks the same consideration was named in the note and mortgage. It looked like a regular mortgage. Witness said he was a lawyer and notary public. Witness was then presented with a paper by the defendant's attorney, which witness said was the paper he called a mortgage, and which he took to be a mortgage, with the same consideration as the note. This paper was afterwards introduced by the defendant in evidence, and it is on its face an absolute deed, the consideration named being $1.00 "and other valuable considerations to me delivered by I. H. Spears and duties on his part to be performed on my behalf, I hereby grant," &c. Witness Parker admitted he was not on friendly terms with the defendant.

Lottie Young, who was in jail at the same time Delia Milner was, testified in substance that Parker requested

her to witness a paper. "Mr. Parker read the paper and it was to clear Delia Milner for $50.00." Witness did not read the paper. Parker read the paper before she signed it. Delia Milner was in one cell and she in another. She did not see Delia sign. She didn't notice but one paper. Parker read from the paper that Spears was to clear Delia for $50.00.

Mamie Breham testified for the State in substance that she was in the jail away from the cell in which Delia Milner was, and was called on by Parker to witness a paper which he called a mortgage. He read from the paper that Spears was to clear Delia Milner for $50.00. She did not read the paper, and does not know there was more than one paper.

Charles H. Laney testified in substance, without objection, that sometime in March friends of Delia Milner employed him to represent her on a charge of arson. He saw her in the county jail and she said she had dropped Spears. No information was filed against her, and two or three weeks after her release she came to his office and stated she had given Spears a note for $50.00; that since her release Spears had told her the note was for $150.00, and he had sold the note to Mr. Wentworth, and she wanted him to protect her against the note and to have the deed she had made Spears set aside as he had put some lots in it which she did not tell him to put in. He agreed to represent her if she raised a fee, which she failed to do, and he did nothing in the matter. About two or three weeks before witness testified Delia came to his office and told him she could prove that the note was for $50.00 by two girls she brought with her. Witness laid the matter before the Solicitor Mr. Loftin.

The defendant introduced Mr. R. J. Cunningham, who testified substantially as follows: He knew Delia Milner. She came to him in June or July, of 1909, several times

and wanted to sell him some lots for $500.00, and there were some mortgages on the property. We figured up the indebtedness—$250.00 she had borrowed from Mr. Wentworth, and the Spears' note which he had sold Wentworth. Delia never mentioned anything about the note of $150.00 being forged or raised, when she got him to take it up and he paid her $75.00 in money subject to the contracts of sale she had made. He did not get the note from Wentworth when he took it up. Delia did not say anything about the note being for $50.00. The first witness heard of the note being forged was a few days before he testified when he was summoned to appear at Mr. Loftin's office.

Charley Johnson testified for the defendant, that he was a notary public. He has an office on Tarragona Street, Pensacola; knew B. M. Hatton and George W. Parker, was present when a conversation took place between Hatton, Parker and himself in regard to the fee Spears had gotten for representing Delia Milner and Levi Brown. Parker brought up the conversation and stated that the note was for $150.00, and was a handsome fee. Heard no mention at that time of the note being raised. This conversation took place at Hatton's office where witness at that time had desk room.

The defendant proved a good reputation for honesty and integrity by Dr. H. G. Williams and others.

Spears testified on his own behalf at some length. Was induced to go to the jail to see Brown and Delia Milner by friends of theirs; saw them both, made an agreement to represent Delia for $150.00. She executed the note for $150.00 and deed to secure the note. He represented Delia and Brown in the City Court and they were turned over to the county, and were bound over to the Criminal Court

of Record. No information was filed against them and they were released from jail. Delia and Brown came immediately to his office and wanted to know if he was going to charge them the same amount as he had charged to go through the trial of the cases. He agreed with Delia and Brown to charge them $150.00 together, instead of $150.00 each. He told them he had traded the note to Mr. Wentworth, and Brown agreed to assume half of the note for $150.00, and had him make out a deed of a lot to Delia Milner in assumption of one half of the note. He never heard of the note being raised or forged until after he was arrested for having in his possession stolen goods. Witness goes into the details of a business transaction in which Brown and Delia were involved.

B. M. Hatton testified for the State that he knew George W. Parker and Spears; that sometime last March Parker came over to our office and either Charley Johnson or himself spoke of the large fee Spears had gotten. Witness said it was $150.00. Parker said it was $50.00; that he saw the note and took the acknowledgment. Witness saw the note and mortgage the day after they were executed and the note was for $150.00 at that time. Witness says it is not true that Parker said the amount was $150.00, but said positively it was for $50.00. Witness said he was a lawyer.

Delia Milner was introduced by the State in rebuttal. She denied that Levi Brown agreed to assume one-half of the $150.00 note, and described the business relations of herself and Brown, though she says she had no business relations with him. He owns a store which is referred to in the testimony, but the goods are in her name.

Levi Brown testified for the State in rebuttal. He states that while he was in jail Spears came to see him, and he

told Spears that he wanted him to get him a bond, and Spears told him it would be necessary for witness to turn over to him his property and the keys to his store, to get him a bond, which it seems he did. He then goes into a description of an exchange of lots with Delia. He denies he assumed one-half of the $150.00 note, and says Spears suggested to him to let the lot pay one- half of the $150.00 note of Delia, but witness did not agree to it. Says he heard Delia tell Spears the note was for $50.00 only when she signed it. Witness testifies as to certain receipts which appear to have no bearing on the case. He says he has never had any settlement with Spears.

The foregoing is in substance all the evidence bearing on the question of the forgery of the note for which the defendant Spears was convicted. The note which he is charged with raising from $50.00 to $150.00 was not introduced in evidence. Delia Milner says on her examination in chief "she thought the note was for $50.00." On cross-examination she said she knew the note was for $50.00, though it was "kinder dark in the jail when she read it." Parker says the note was executed for $50.00, but he also says the same consideration was expressed in the deed, in which he was mistaken. Neither of the two women who were in jail and who witnessed the mortgage read the note, but say that as Parker read the papers they were for fifty dollars for which sum Spears was to clear Delia. Delia says that she did not employ Spears to clear her, but to get her a bond. Parker admitted he was not on friendly terms with Spears. Delia recognized she owed Spears $150.00 more than five months after its date by getting Cunningham to pay Wentworth that sum to take it up. ·She never mentioned to Cunningham that the note was forged or altered or that she only owed Spears $50.00. The fact that the note was for $150.00 was discussed the

day after it was executed by some of the State witnesses. Parker's memory of the transaction is shown to be imperfect by his statement in regard to the mortgage and its consideration, and then too, he admits he is not on friendly terms with the defendant.

The note which it is alleged was altered was not in evidence. Neither the Judge or jury had an opportunity to examine it, and were thus deprived of the best evidence upon the question of its alteration. The evidence on the part of the State is so loose and unsatisfactory, and as the defendant was tried on an information containing different counts charging separate offenses, growing out of entirely separate and distinct facts, having no sort of relation to one another, we feel constrained to say that in our opinion the defendant should have had a new trial. Green v. State, 17 Fla. 669.

In both the motion for a new trial and in a motion in arrest of judgment the contention is made that the defendant was prejudiced by being tried on an information which contained three counts, in the first of which he was charged with receiving stolen goods, in the second with forgery, and in the third with uttering a forged instrument. The two last were based on practically the same transaction, and the joining of such counts in an information is unobjectionable; but the joining of counts based on entirely different facts is a practice which is almost universally reprobated. It is calculated to prejudice and embarrass a defendant in the trial in various ways. By joining a number of distinct charges, based on entirely different transactions, the impression is almost necessarily created that the defendant is a general criminal. One charge reacts unfavorably against him as to another. He may also be embarrassed in the selection of a jury—and his mind distracted in the preparation of his defence. We do not approve of the practice followed in

this case. But no timely objection was made and the record does not affirmatively disclose that the defendant was actually prejudiced or embarrassed in the trial—and in view of the fact that on a new trial. this question cannot again arise, it is unnecessary to express any further opinion on this phase of the case.

The judgment of the Criminal Court of Record is reversed, and a new trial awarded.

All concur, except Taylor, J., absent on account of illness.