[L. A. No. 12292. In Bank.—December 29, 1930.]

ISAIAH H. SPEARS, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Lyon, Fleming & Robbins for Petitioner.

O'Melveny, Tuller & Myers for Respondent The State Bar.

THE COURT.—Petitioner moves this court for an order admitting him to practice law as an attorney and counselor at law in all of the courts of this state notwithstanding the refusal of the Committee of Bar Examiners to recommend him for admission.

The record which has been certified to this court discloses the fact that on or about April 26, 1929, petitioner herein made application in writing to The State Bar of California for admission as an attorney and counselor at law. This application was accompanied by the required certificate of the clerk of the Supreme Court of the state of Oklahoma, showing that applicant was admitted upon motion on March 20, 1916, to the Supreme Court of Oklahoma, that applicant at the date of said certificate was a member in good standing of said Oklahoma bar, and that no disbarment proceedings had ever been filed against him. The application was also accompanied by the required letters of recommendation by judges, attorneys and former clients of the applicant. Petitioner also filed with the State Board of Bar Examiners in support of his application a sworn affidavit in which he stated, among other things, "that affiant has never been charged before any court with crime amounting to either felony or misdemeanor involving moral turpitude".

The record also shows that previous to the date of this application and on or about March 9, 1926, petitioner herein had made application in writing to the District Court of Appeal, Second Appellate District, for admission as an attorney and counselor at law. In support of this application two separate sworn affidavits were filed by petitioner to the effect "that affiant has never been charged before any court with crime amounting to either felony or misdemeanor involving moral turpitude". The first affidavit was sworn to by petitioner before a duly qualified and acting notary public of the county of Tulsa, state of Oklahoma, and the second affidavit was sworn to before a duly qualified and acting notary public of the county of Los Angeles, state of California. Petitioner was absent from the state for a time subsequent to this application and apparently it was never acted upon by the District Court of Appeal.

An oral hearing upon petitioner's last filed application was held by the Committee of Bar Examiners on December 7, 1929, at which hearing it developed that the sworn affidavits accompanying the applications were not in fact true for the reason that upon three and possibly four separate occasions petitioner had been charged with a crime amounting to either felony or misdemeanor involving moral turpitude.

At said oral hearing the petitioner herein admitted that in September, 1909, he was charged before the criminal court of record for the county of Escambia, state of Florida, in an information containing three counts, with the crime of "receiving and aiding in the concealment of stolen property, knowing it to have been stolen", with the crime of forgery, and with the crime of uttering forged paper. Upon the trial he was convicted on the second and third counts and sentenced upon the second count to be confined by imprisonment in the county jail at hard labor for a period of one year and sentenced upon the third count to be confined by imprisonment in the county jail at hard labor for a period of three months. The judgment of said criminal court of record was thereafter reversed by the Supreme Court of Florida and a new trial granted principally on the ground that the evidence was not sufficient to justify the verdict. (*Spears* v. *State,* 59 Fla. 44 [51 South. 815].) According to petitioner no new trial was had, but the charges against him were dismissed. At said hearing the petitioner also admitted that in 1923 or 1924 he had been charged before the District Court of and for the County of Tulsa, Oklahoma, with the crime of misappropriation of guardianship funds; that in 1926 he was charged before the United States commissioner at and in the county of Tulsa, Oklahoma, with the crime of violation of the Mann Act, and that in 1927 he was charged with the crime of issuing a fictitious check. Petitioner explained to the Committee of Bar Examiners his version of the circumstances leading up to the filing of these charges and declared that each of them after a full hearing had been dismissed.

Subsequently on March 1, 1930, the Committee of Bar Examiners made its findings and recommendation in the matter of said application and adopted its resolution that the application of petitioner herein for admission on motion

to practice law in the state of California be denied. Petitioner thereafter moved this court for admission despite the adverse recommendation of said committee.

In several cases in this state involving the same proceeding the holding has been that where an attorney at the time of his application for admission has made a false affidavit, knowing it to be untrue, the fraud of the attorney has been established and his license has been revoked. (*In re Mash,* 28 Cal. App. 692 [153 Pac. 961]; *In re Lasley,* 61 Cal. App. 59 [214 Pac. 284]; *In re Holland,* 96 Cal. App. 655 [274 Pac. 559]; *In re Jacobsen,* 105 Cal. App. 236 [287 Pac. 131]; *State Bar* v. *Hull,* 103 Cal. App. 302 [284 Pac. 492].)

Obviously, if the license of an attorney already admitted to practice may be revoked by reason of the fact that he made false statements in the affidavits accompanying his application for admission, a refusal to admit an attorney applying for an order admitting him to practice may be predicated upon the same offense.

At the threshold of the discussion it should be stated as definitely settled in this state that irrespective of the outcome of any charges preferred against an applicant for admission to practice law in this state, whether he be convicted, acquitted or the charges dismissed, a duty rests upon said applicant to make a full disclosure of such charges to the committee charged with the duty and the responsibility of investigating his fitness to practice law in this state. We are aware that this requirement calls for a high degree of frankness and truthfulness on the part of the attorney making application for admission to practice law in this state, but no good reason presents itself why such a high standard of integrity should not be required. This duty to make a full disclosure is an absolute duty and a justification for a failure to perform it is not to be found in the excuse that an applicant has been advised by some person, no matter how high in official position that person may stand, that such disclosure is not necessary, nor by the sophistic argument that the charges having been dismissed or the disbarment proceedings dropped, in effect no charges were preferred or proceedings instituted, and applicant is, therefore, justified in stating under oath that no charges were

in fact preferred or proceedings for disbarment instituted. (*In re Jacobsen, supra.*)

It should be noted that the burden of establishing good moral character rests upon the applicant. It should also be noted that the scope of investigation of applicant's moral character is wider than an investigation by the Committee of Bar Examiners to ascertain whether or not applicant has been convicted of an offense constituting a felony or misdemeanor, or whether he has in fact been disbarred in another state. Subdivision 5 of section 287 of the Code of Civil Procedure which enumerates the causes for which an attorney may be removed or suspended provides that " . . . in the event that such act shall constitute a felony or misdemeanor, conviction thereof in a criminal proceeding shall not be a condition precedent to disbarment or suspension from practice therefor". If conviction is not a condition precedent to disbarment or suspension, it is much less a condition precedent to a refusal to admit to practice.

In *In re Wells*, 174 Cal. 467 [163 Pac. 657], this court said, Mr. Justice Shaw writing the opinion: "It is contended on behalf of the applicant that upon an attorney's application for admission the court cannot reject him for want of good moral character, unless it appears that he has been guilty of acts which would be cause for his disbarment or suspension. We think this proposition cannot be sustained. On his admission on certificate he must produce 'satisfactory evidence of good moral character'. *The burden is on him to do this.* In a proceeding to disbar an attorney the burden is on the accuser to prove moral turpitude. The requirement on his admission is to prevent the accrediting of untrustworthy persons as fit to receive the confidence attending upon the relation of attorney and client. The inquiry may extend to his general character as well as to particular acts. *It is broader in its scope than that in a disbarment proceeding.* The court may receive any evidence which tends to show his character for honesty, integrity and general morality, and may no doubt refuse admission upon proofs that might not establish his guilt of any of the acts declared to be causes for disbarment." (Italics ours.)

 Petitioner admits the falsity of the three affidavits executed by him and filed in support of his application but alleges that he misunderstood the language of the affidavits and believed that the statement "charged before any court with crime amounting to either felony or misdemeanor involving moral turpitude" meant "charged with and convicted of" or "guilty of". He alleges that at the time of the filing of said affidavits he had in mind that he would be required to appear personally at a hearing of the Committee of Bar Examiners at which time he intended to disclose to the committee the fact that he had been charged with crime in the states of Florida and Oklahoma, at the same time explaining to them the circumstances surrounding the filing of said charges against him, and alleges that at said hearing before the Committee of Bar Examiners he did in fact voluntarily disclose the fact that he had been on the various occasions hereinbefore referred to charged with said offenses.

Had the false statement occurred in but one affidavit, the explanation of applicant that he misinterpreted the phrase "charged with" to mean "charged with and convicted of" or "guilty of" would, perhaps, be credible. But the fact that the false statement was made under oath in three separate affidavits renders less plausible applicant's explanation that he misinterpreted it. It is difficult to believe that, the matter having been brought to his attention on three separate occasions, no doubt entered his mind as what was the correct meaning of the statement which he was subscribing under oath. Furthermore, the explanation that at the time he filed his affidavits he had in mind that at the hearing at which he would appear personally he would divulge the former charges filed against him, is indicative that there was a doubt, at least, in his mind that his interpretation of the phrase, "charged with", was correct.

However, the record does bear out applicant's contention that, in response to an inquiry from the member of the committee interrogating the applicant as to whether there was anything further reflecting upon applicant's character which the committee should know, applicant did make a voluntary disclosure to the Committee of Bar Examiners of the charges filed against him as hereinbefore set out. This, undoubtedly, tends strongly to support applicant's

claim that he had no intention of wilfully deceiving the committee. The record, however, also discloses that in the interim between the filing of the false affidavits by applicant and the date of the oral hearing, information had come into the possession of the Committee of Bar Examiners to the effect that applicant had in fact been charged with the commission of a felony in an information filed in Florida and had been convicted. There were in fact on the date of the oral hearing two letters in the files of the Committee of Bar Examiners derogatory to applicant's good moral character. One of these letters was from a former member of the bar of this state and now a member of the Oklahoma bar, who voluntarily wrote to the committee advising them that a thorough investigation should be made of applicant's previous record. The other letter was a response to a letter from the committee inquiring with reference to the former conviction of applicant. The record does not indicate that applicant at the time he gave the information with reference to his previous record was aware that the committee was in possession of this information. In the absence of such showing we are inclined to accept as true, therefore, that, whatever may have been applicant's intentions at the date of the filing of the false affidavits, at the date of the oral hearing he did not intend to perpetrate a fraud upon the committee and subsequently upon this court by withholding information which might have a bearing upon the committee's recommendation.

However, conceding for the sake of argument that applicant by a full and voluntary disclosure of his previous record thereby purged himself of the imputation of fraud which arose from the filing by him of a false affidavit, nevertheless, we are of the opinion, that although this phase of the case be entirely eliminated from consideration, the Committee of Bar Examiners were entirely justified in refusing to recommend the applicant for admission to practice law in this state.

As stated in *In re Wells, supra,* the burden of establishing his good moral character is upon an applicant for admission. Although the Committee of Bar Examiners will make as thorough an investigation as possible, they are not required to undertake the burden of disproving an applicant's allega-

tions of good moral character. And if the proof offered by an applicant falls short of convincing the Committee of Bar Examiners, it is their privilege and their duty to refuse to recommend such applicant for admission to the bar of this state.

An analysis of the proof offered by applicant shows that there is at least a question as to applicant's moral character. In other words, the proof offered is not satisfactory. Although the Committee of Bar Examiners has on file letters of recommendation testifying to the good character of applicant and affirming that the writers thereof have found him to be honest, trustworthy and a man of integrity, it also has on file letters which unqualifiedly and unequivocally state that in the writers' opinion applicant is not such a person. In addition to these contradictory letters there exists the conceded fact that on four separate occasions applicant has been charged with the commission of a crime. As to the final disposition of these charges the committee has only the word of applicant, which, in view of the falsity of the affidavits filed by him, they were entitled to consider as at least questionable. Considering the number and seriousness of the charges, a definite obligation rests upon applicant to attempt some showing in reference to them. Documentary evidence of the dismissal of the charges should be available to applicant or a showing made by him that he is unable to secure such proof. The record also shows that applicant in his replies to questions relative to these charges appeared to consider them of small moment. It was, perhaps, this attitude on his part which influenced the committee to refuse to recommend him for admission.

While the powers of the Committee of Bar Examiners are merely recommendatory and not binding upon this court, nevertheless, the Committee of Bar Examiners was expressly created by statutory enactment for the definite purpose of relieving the court of the onerous duty of examining applicants for admission and investigating their fitness both as to legal learning and moral character to practice law in this state, and this court, recognizing this fact, will refuse to exercise its power in contravention to the adverse recommendation of the Committee of Bar Examiners unless a convincing showing is made by the applicant to the court that

such adverse recommendation is not based upon sound premises and valid reasoning.

The petitioner herein has failed to make such a showing, and his motion for an order admitting him to practice law in this state, notwithstanding the refusal of the Committee of Bar Examiners to recommend him for admission is, therefore, denied.