Application of J. NORMAN STONE, for Admission to
the Bar of the State of Wyoming.

(No. 4-756; October 18th, 1955; 288 Pac. (2d) 767)

## OPINION

J. Norman Stone, formerly known as Jack N. Steinberg, was duly admitted to practice law in the District of Columbia and there practiced law for approximately ten years. Thereafter on January 7, 1955, he filed an application in this court to be admitted as a practicing attorney in this state. The petition was duly referred to the Board of Law Examiners as required by law. That board made an investigation and on August 8, 1955, filed in this court its report recommending to this court that applicant was not qualified to become a member of the bar of this state. Upon learning of the action of the board informally, applicant filed in this court a demand for a hearing in open court. Applicant asked that he be permitted to subpoena all the mem-

bers of the Board of Law Examiners and examine them under oath. If the court should permit that every time the board makes an adverse report, we fear we should find no members of the bar of this state willing to serve on the board and perform their duties properly, onerous as they necessarily are.

This court entered its order directing the applicant to show cause in writing why the report of the members of the Board of Law Examiners should not be approved. The applicant has failed to show such cause. He has demanded a trial by jury. This court never summons a jury in matters pending before it. The district court has no authority in this matter. We know of no case where it has been held that an applicant for admission to the bar is entitled to have his application decided by a jury. The proceeding before us is not a disbarment proceeding in which an attorney at law is entitled to know the specific charges against him. Applicant takes the position that he is entitled to be admitted as a member of the bar of this state as a matter of constitutional right. He stated in a radio broadcast at Sheridan, Wyoming, on September 18, 1955, that the law of this state provides that if a lawyer is a practicing lawyer in another jurisdiction and has a good moral character "he must, he must be admitted here in Wyoming as a lawyer." Applicant is mistaken. The courts have held that he is not entitled to be admitted to the bar as a matter of right. 7 C.J.S. 708. To practice law is a privilege and not a right. The admittance to the bar in this state is a matter of judicial discretion. The Supreme Court of Oregon has a rule that no foreign attorney should be admitted without recommendation from three members of that state's Board of Law Examiners. In Ex parte Keeley, 189 P. 885, it was held that while the court might dispense with such recommendation the reason therefor should be plain, the court saying: "Of course, the admission

of an applicant is ultimately and finally for this court, and is matter of broad discretion, and we could, no doubt, in a proper case, disregard or suspend the rule and admit an applicant without the required recommendation; but it would have to be a plain case before we would feel justified in doing so. We do not feel that this is such a case."

In the case at bar, there is not alone an absence of recommendation on the part of the board, but a positive recommendation that the applicant should be denied admission. Judging from the tenor of the decision, the Oregon court would doubtless refuse admission in such a case. In Mitchell v. State Board of Law Examiners, 155 Mich. 452, 119 N.W. 587, the court stated that to justify the court in refusing to follow an adverse recommendation of the board of law examiners, it must appear that the board has abused its discretion. In Spears v. State Bar of California, 211 Cal. 183, 294 P. 697, 700, 72 A.L.R. 923, the court stated: "While the powers of the committee of bar examiners are merely recommendatory and not binding upon this court, nevertheless, the committee of bar examiners was expressly created by statutory enactment for the definite purpose of relieving the court of the onerous duty of examining applicants for admission and investigating their fitness both as to legal learning and moral character to practice law in this state, and this court, recognizing this fact, will refuse to exercise its power in contravention to the adverse recommendation of the committee of bar examiners unless a convincing showing is made by the applicant to the court that such adverse recommendation is not based upon sound premises and valid reasoning."

In this state we have five members on the Board of Law Examiners. They are all eminent and respectable members of the bar of this state, one of them having

served more than thirty years. There is no indication that these members are prejudiced or have made their recommendation without good cause. The legislature of this state has seen fit to create this Board of Law Examiners and has directed that all applications for admission to the bar shall be referred to that board to pass upon the qualifications of all applicants to be admitted to the bar. § 2-102 Wyoming Compiled Statutes, 1945. Inferentially at least the legislature has thus directed this court to depend, to a large extent at least, upon the recommendation of the board. We do not feel justified in disregarding that recommendation without a showing that the board has acted arbitrarily and abused its discretion. We find no such abuse.

We have examined the report of the board and the evidence submitted to it. Because of the distance of the District of Columbia from Wyoming, the board was unable to make a firsthand investigation of certain matters brought to its attention. In consequence, it was compelled to seek the assistance of a nationally known investigational service which was available to them only under the express promise that all information communicated must be held as confidential. Under these circumstances, we are not privileged to state the source of that information. Applicant demands that he be furnished with the details of the information received by the Board of Law Examiners tending to show that he should not be admitted to practice law here. However, he signed and swore to the following, among other things, when he sought to be admitted, directed to The National Conference of Bar Examiners: "I, J. Norman Stone, hereby apply for a character report in connection with my application for admission to practice law in the State of Wyoming. I understand that I will not receive and am not entitled to a copy of the report nor to know its contents. I agree to give any further information which may be required in refer-

ence to my past record and consent to having this investigation made and such information as may be received reported to the examining authority." In another part of the same application he stated: "I understand * * * that said report shall be strictly confidential to the examining authority." That confidential information may be used to determine the fitness of the applicant to practice law in this state is recognized by § 2-208 Wyoming Compiled Statutes, 1945, which, while limited to information obtained from members of the bar of this state, should we think be construed as applicable in all cases.

A valuable case on the point before us is the case of In re O'Brien's Petition, 79 Conn. 46, 63 A. 777, 779, 780, 781, which disposes substantially of all the contentions made herein by applicant. In that case it appears that by rule of the superior court no one could be admitted to the bar of that state unless recommended by the state bar. It was the custom to refer a petition for admission to the county bar, which then sent its recommendation to the state bar. That was done, and he was refused admission. The applicant then applied to the superior court, which refused to hear the applicant on the ground that it had no power to determine the qualifications of the petitioner. The supreme court held that the superior court rightly declined to hear evidence as to the qualifications of the petitioner, except on the question as to whether the investigation of the board had been fairly conducted. We need not go as far as that, though we might say that while we entered an order for the applicant to show cause why the recommendation of the board should be overruled, he has failed to show that the Board abused its discretion and did not make its investigation fairly. The Supreme Court of Errors of Connecticut proceeeded to state among other things: "A court is but indifferently adapted to the task of passing upon the qualifications

for engaging in legal practice of those who appear before it as strangers, which are personal to themselves and independent of educational attainments. These can be easily determined by a bar to some, at least, of whom they will not be strangers. A court could only proceed, in such a matter, on testimony given in public. The bar can act upon their own knowledge, or upon statements made before them in private, and without the formality of an oath. 'It is not enough for an attorney that he be honest. He must be that, and more. He must be believed to be honest. It is absolutely essential to the usefulness of an attorney that he be entitled to the confidence of the community wherein he practices.' Fairfield County Bar v. Taylor, 60 Conn. 11, 17, 22 Atl. 441, 13 L.R.A. 767 * * * Character, so far as it can be judged by men, rests on opinion." The court proceeded to state further: "The vote of the bar against approving the application was not defective because no reason for their action were stated in it or otherwise communicated to the state bar examining committee. The question of approval or disapproval was one addressed to their discretion as officers of the court, so only that it should be fairly and impartially exercised. The vote of each member present at the bar meeting was to be given in view both of all facts brought to their attention by the report of the committee and of his own personal acquaintance, if any, with the petitioner, and personal knowledge of his record in the past."

In the case of In re Bowers, 138 Tenn. 662, 200 S.W. 821, 823, the court stated:

"We held in the first disposition of this case that this court would act only upon the certificate of the state board of law examiners. In re Bowers, supra. The question for determination now is whether upon exceptions to the board's report, this court will go into evidence and determine for itself contrary to the recommendation of the board that the applicant should

be admitted to the practice. It seems to us that the mere statement of the proposition is its own answer. This court cannot grade papers or otherwise hold the examinations required of the state board of law examiners nor can it revise the action of the board in these matters. The certificate of the board is the only thing which the Legislature intended that we should consider, and when the board refuses to make a certificate, or, as in this case, certifies that the applicant is an unfit person to be admitted to the practice, that ends the matter in the absence of an allegation and proof of fraud, corruption, or oppression upon the part of the board. We held in the former case that this court has no jurisdiction to entertain originally a petition to revise the judgment of the board. We hold now that, where the matters complained of are mere considerations of judgment or opinion upon the part of the board, this court will not and cannot undertake to revise its action. We think this is the proper construction of the act referred to. In addition, if we should hold that we are authorized to revise the judgment of the board in mere matters of opinion, the serious business for which the court was organized would be largely displaced by the complaints of disappointed applicants. It is improbable that the Legislature has power to require us to hold examinations for applicants to practice law, but, of course, we do not decide this question as it is not before us."

See also Annotations in 28 A.L.R. 1140 and 72 A.L.R. 929.

In an article in 23 Rocky Mountain Law Review, pp. 34, 36, 37, Judge Phillips calls attention to the Pennsylvania procedure in admitting applicants to the bar, stating that the board of examiners usually reports in confidence its reason for rejecting an applicant, and that "The reasons are not disclosed to the applicant." The author in an article in 20 Fordham Law Review, p. 316, speaking of the country at large in connection with admissions to the bar states in part: "Generally the decision of the committee is subject to court review, but in one or two states it is final. The

replies to the questionnaire indicate, however, that even when the final decision on character rests with the court, as a practical matter, the committee's decision is final."

In this case we have not merely relied upon the assertion of the Board of Law Examiners that it has confidential information which shows that the applicant ought not to practice law in this state, but we have examined the evidence submitted to the board and it may not be inappropriate to mention a few of the matters appearing before it without disclosing the source of the information. The applicant instituted numerous cases for the recovery of fees. This in itself is not wrong, but it shows the unduly contentious spirit of the applicant, and that he does not get along with his clients. He has been censured several times by the proper authorities for his professional conduct. The board has been advised that the applicant "is a discredit to his profession and that any enlargement of his field of activity would be a misfortune." We should say, however, in justice to the applicant that he has many commendatory letters. But the board has necessarily a discretion in determining the fitness of the applicant to be admitted to practice law in this state.

In addition to having before us the report of the board, we should take note of several matters which have come to the direct attention of this court. We have, among other matters, noted that in the first letter received by this court from the applicant he wanted to prove "execrable practices of certain Sheridan lawyers living and deceased." We are unable to see what that has to do with the fitness of the applicant to practice law. He has threatened to sue the members of the board, presumably because they performed their duties as required by law. By the letterheads of the applicant, received by this court, the applicant holds himself out as an attorney at law in this state, which

he has no right to do. He has written a letter to the Secretary of the Board of Law Examiners, sending a copy thereof to this court, and noting thereon that he has also sent a copy to Tracy McCraken, publisher of the Wyoming Eagle and Wyoming State Tribune, newspapers of this state; to Drew Pearson, a national news commentator; to one member of our congressional delegation; to the governor of this state and to several others. He evidently is disposed to improperly try the matter pending in this court before the public. The letter is too long to set out. It was obviously written to unduly influence and perhaps intimidate this court. In this letter he quotes page after page of scriptures, and the undue excess thereof cannot help but make anyone wonder as to the applicant's mental operations. He has sent a copy of a letter written to a United States Senator to the Pope and many other persons, the contents of which were evidently partially written to show his religious fervor. He undertook to admonish judges of the District Court of Columbia not to open court in the manner usual in this country, but by a prayer composed by himself. On September 18, 1955, he made a radio address at Sheridan, Wyoming, for half an hour, concerning the matter pending before us. In that address he directed his main shafts at the president of the Board of Law Examiners who lives at Sheridan, and challenged him to a debate. He informed his audience that he did not need a lawyer for the reason that Jesus was his senior partner in his efforts to have his application granted. It may be that applicant is devoutly religious, which is highly commendable, but his excessive reference to religion and to the scriptures, when submitted as evidence of his qualifications to be admitted to the practice of law, does give some cause to suspect that his religious fervor partakes of a fanaticism, the presence of which does not make for that mental balance and equipoise which every lawyer

should possess in order that his client's interest be not endangered, for after all, no matter how devoutly religious a lawyer may be, he must, when he comes into a court of justice and law, rely upon the legal principles of our jurisprudence, which does take cognizance of the moral law as far as we humans have found that to be practicable.

On October 5, 1955, applicant addressed a letter to the Attorney General of the United States. He sent a copy to this court, to Drew Pearson, a commentator, and to a number of newspapers, including the Denver Post. The letter is as follows:

October 5, 1955

"Department of Justice,

Washington, D. C.

Attention: Attorney General, Herbert T. Brownell

Dear Mr. Brownell:

The State Board of Law Examiners of Wyoming and the Supreme Court of Wyoming have refused to give me a license to practice law in this state, although I have met all of the requirements as prescribed by state law.

I indict the State Board of Law Examiners of Wyoming together with the Supreme Court of Wyoming with having fomented a conspiracy in concert to deprive me of my livelihood, willfully, knowingly, maliciously and without due regard to my rights and sensibilities as such regards ought to be tendered a citizen of Wyoming and the United States of America and as a human being whose body is a temple wherein resides the spirit of God as St. Paul so nobly taught us.

I was entitled to be presented with my law license on May 17, 1955. The State Board of Law Examiners of Wyoming turned me down and the Supreme Court of this state is setting in a most dilatory and evasive manner.

I demanded a jury trial of the Wyoming Supreme

Court and it has not even acted on that simple demand. I request that you protect my rights as guaranteed to me under the Constitution of the United States and in particular the Fourteenth Amendment as you are directed is so to do by Federal law.

I demand justice.

Your courtesy in making an immediate investigation of this manifest outrage would be appreciated. God Bless You,

J. NORMAN STONE

jns :self

Copy to:

The Supreme Court of Wyoming, Cheyenne, Wyoming. Hon. William A. Riner, Chief Justice Hon. Fred H. Blume, Justice Harry Harnsberger, Justice D. P. B. Marshall, Esq. Chairman, State Board of Law Examiners, Sheridan, Wyoming The Sheridan Press, Sheridan, Wyoming Drew Pearson, 1313-29th Street, N. W., Washington, D. C. Weekly Publications, 390 Dennison Avenue, Dayton 1, Ohio (Newsweek) Hemingway, The News Commentator, c/o Mutual Broadcasting Co., L. A., Calif. Time, Inc., 343 N. Michigan Ave., Chicago, Ill. The Editor, The New York Times The Editor, The Evening Star, Washington, D. C. The United Press, New York City The Associated Press, 50 Rockefellow Plaza, New York 20 The Editor, The Philadelphia Inquirer The Editor, The Chicago Tribune The Editor, The Denver Post The Editor, The Washington Post-Herald The Editor, The New York Post The Editor, San Francisco Examiner The Editor, The Baltimore Sun Members of the State Board of Law Examiners (no copies) Edward T. Lazear, Secretary, Cheyenne, Wyoming

P. W. Spaulding, Evanston, Wyoming
Charles Crowell, Casper, Wyoming

On the same date he sent a letter to the clerk of this court, copy of which was sent to Drew Pearson, commentator, to numerous papers and publications and to some individuals. In part of that letter he states:

"I accuse the Wyoming Supreme Court of being unfair, prejudiced, partial and biased and am sure that I will not get a fair hearing unless the court permits a jury of good Wyoming people to hear it. The court is trying to bury me under a maze of legal technicality but the people of Wyoming can see through this hocus pocus.

"I accuse the Supreme Court of Wyoming of deliberately delaying this matter in the misguided hope that I will run out of money or patience or both. I can assure you sir, that I will have both so long as I live."

It is needless to say that these letters came to us as a complete surprise. We were at that very time busily engaged in searching for and reading the authorities that have passed on a matter similar to that before us. Applicant complains of delay. When in the fore part of August of this year this matter was first brought to our attention we were busy writing a number of opinions in other cases which since that time have been handed down and, in the interval, heard orally a number of cases pending in this court which were entitled to be heard before this case. This court for at least a quarter of a century has disposed of the cases before it as speedily as most other appellate courts and, in most instances, even more speedily. In the Brownell letter he states that this court has refused him a license, which at times was wholly false, since we were then engaged in an exhaustive investigation as to whether or not the license should be granted. He accuses us in the same letter of willfully and maliciously fomenting, or taking part in fomenting a

conspiracy to deprive him of a livelihood. That is a serious charge, wholly unfounded. It is an insult, and clearly a contempt of this court and each of its members. No court, we think, would tolerate such unfounded accusation, and no other court, we think, would exercise the patience which this court so far is exercising in this matter. Applicant is inconsistent, saying in the Brownell letter that we are depriving him of his livelihood, but states in the letter to the clerk of this court that he will not run out of money. We are unable to perceive what the Attorney General of the United States has to do with the matter pending before us. Applicant seems to be wholly ignorant of the principles underlying our governmental structure. He again insists that he should be granted a trial by jury. We have heretofore mentioned that matter. It would perhaps have been excusable for him to mention that matter once, but it is wholly inexcusable for him to mention it again after applicant had ample time to look up the law. In fact, his whole conduct since August shows that he has failed to familiarize himself with the law governing in a matter such as is before us, and it would be unpardonable for this or any other court to grant a license to one whose disposition is to neglect to look up the law, the failure of which can be fatal to a client's interest, as all who are qualified to be lawyers will know. He accuses us of prejudice, which is untrue. We never heard of the applicant until he wrote us in the month of August of this year, so obviously we could not then have entertained any prejudice against him. Nor does the fact that we have confidence in the Board of Law Examiners convict the the members of this court of prejudice against him, because we find, as we do, that they have acted in accordance with what they deem to be just, proper and upright and in the best interest of the citizens of this state. However, had he indicated that in the beginning,

we should have been glad to have called in district judges in our stead to pass upon the recommendation of the Board of Law Examiners. It is now too late, unless we be willing to admit that we are cowardly in dealing out justice to parties before the court. Applicant's conduct seems to indicate a deliberate invitation for us to reject his application to practice law in this state, or is at least a challenge for us to dare to deny it. The constitution and laws of this state have imposed upon us the burden, unpleasant as that frequently is, to decide the cases and matters properly before this court. For us to do so needs no challenge nor a dare. In our humble way, we shall now and hereafter, as we have done in the past, decide the cases and matters properly before us without fear or favor according to that sense of fairness and justice with which nature has been kind enough to endow us, fallible though that may be, and without reference to any threats or intimidation directed against us.

Taking into consideration all the facts before us, we think we are constrained to approve the recommendation of the Board of Law Examiners. We think it would be an abuse of judicial discretion for us to fail to do so under the facts herein. The applicant's application to be admitted to practice law in this state is, accordingly denied.