319 P.2d 991

### Application of Jerome H. COURTNEY.

No. 6383.

Supreme Court of Arizona.

Dec. 31, 1957.

Lewis, Roca, Scoville & Beauchamp, Phoenix, for applicant.

Walter Roche and Clarence J. Duncan, Phoenix, for the State Bar of Arizona.

STRUCKMEYER, Justice.

Jerome Henry Courtney, petitioner herein, filed an original motion in this court

seeking admission to the State Bar of Arizona, and on his application an order was issued directing the State Committee on Examinations and Admissions to show cause why petitioner should not be admitted to membership in the State Bar and to the practice of law in Arizona. The Committee filed a response from which these uncontradicted facts appear.

Petitioner is a male citizen of the United States, 35 years of age, and a graduate of the University of Minnesota Law School. He was admitted to practice in the State of Minnesota in 1948 and practiced in Minneapolis until he established a legal residence in Tucson, Arizona, in June of 1954. Thereafter, he passed the Arizona State Bar Examination with a satisfactory grade, but the Committee on Examinations and Admissions denied his application for admission on the ground that he failed to establish his good moral character.

■ The admission to the practice of law in Arizona is in part controlled by statute and in part by rules of court. The Legislature has established a public corporation known as the State Bar of Arizona, Chap. 66, Laws of 1933, § 32–201 et seq., A.R.S.1956. By this Act, no person may practice law in this state unless he is an active member of the State Bar in good standing. Admission as an active member of the State Bar is in accordance with Rule 28(a), Supreme Court Rules, 17 A.R.S. Rule 28(a) provides for the appointment of five select members of the State Bar to act as a Committee on Examinations and Admissions who recommend to this court for admission those found to have the necessary qualifications. The Committee, with the approval of the court, has adopted certain rules pertaining to admissions. Rule IV thereof provides that good moral character must be established by an applicant to the satisfaction of the Committee.

■ Good moral character is, of course, the usual requirement for admission to the practice of law, the burden of which rests squarely upon the applicant. In the event the proof of good moral character falls short of convincing the Committee, it is its duty not to recommend an admission. Spears v. State Bar of California, 211 Cal. 183, 294 P. 697, 72 A.L.R. 923. In this it has no discretion; if the members entertain any reservations whatsoever as to the applicant's good moral character, it should not make a favorable recommendation to this court.

■ There is in Arizona no precedent for petitioner's motion for admission to practice after the failure to obtain a recommendation by the Committee. However, because the admission to the practice of law is a judicial function, In re Bailey, 30 Ariz. 407, 248 P. 29, this court may, in the exercise of its inherent powers, admit to the practice of law with or without favorable action by the Committee. Brydonjack

234

v. State Bar of California, 208 Cal. 439, 281 P. 1018, 66 A.L.R. 1507; In re Lacey, 11 Cal.2d 699, 81 P.2d 935.

These conclusions bring us to a consideration of the nature of the evidence which compelled the Committee's action. Petitioner, pending the establishment of a six-months' period of continuous and bona fide residence in the State of Arizona, was employed by his brother-in-law, Warren R. Brock, a duly licensed and practicing lawyer in Tucson. The employment was as a clerk to do those things permitted under the then local practice. Such employment was in existence only two or three days when the following incident occurred.

On Saturday evening, the 17th of July, one Nanette Olson, a minor, was involved in an automobile accident in which she sustained certain personal injuries. Her mother, Mrs. Alberta Pace and Joe Pace, her step-father, were immediately summoned to the hospital in Tucson, where they remained with Nanette Olson until about midnight. On the following Sunday morning, as the Paces were preparing to return to the hospital, a neighbor advised Mrs. Pace that there was a telephone call for her at the neighbor's house. The Pace home did not have a telephone. This call was from petitioner who, Mrs. Pace says, wished to speak to her regarding the accident in which her daughter was involved the previous evening. Mrs. Pace further says that she told petitioner that she was on her way to the hospital and he replied that he would see her there. Concededly, both Brock and petitioner were total strangers to the Paces and to Nanette Olson. At the hospital, petitioner met the Paces near the entrance of Nanette Olson's room and there entered into a discussion with them relative to the advisability of engaging a lawyer to protect her legal rights. This discussion culminated in the signing of an employment contract by the terms of which Warren Brock was employed to represent Mrs. Pace in behalf of her minor daughter to settle or prosecute all claims against those liable for damages arising out of the accident. The employment contract was a typewritten instrument on the letterhead of Warren Brock, containing blanks in which the appropriate names and other data such as the amount to be paid the attorney were inserted in handwriting.

Except for the details of the telephone conversation between Mrs. Pace and petitioner, her testimony is fully corroborated by Mr. Pace and since the litigation was resolved satisfactorily to them, no sufficient reason has been advanced why the highest degree of credibility should not attach to their testimony. Prima facie, it establishes a violation of Canon 27, Canon of Professional Ethics of the American Bar Association prohibiting solicitation of professional employment and is grounds for disciplinary action against a member of the State Bar.

Judged by this standard there is clearly a sufficient want of good moral character to deny admission to practice in this state.

However, petitioner offers this explanation of the incident. On the Sunday morning in question, he received a telephone call from his mother-in-law, a Mrs. Juster. She stated to him that she had received a call from a woman who requested Warren Brock to call Mrs. Pace at the telephone number which later developed to be the Paces' neighbor. Mrs. Juster told the petitioner that she did not know where Brock was at the time, and it was either suggested by Mrs. Juster or the petitioner undertook to return the call in order to determine its urgency. Petitioner's testimony on this point is corroborated by the testimony of Mrs. Juster. Sometime later, petitioner did locate Brock who told him that he was busy and to go ahead and find out about the Pace matter. There is, we notice, some discrepancy between Mrs. Pace's testimony and that of the petitioner as to the exact tenor of the original conversation, petitioner stating that Mrs. Pace told him that her daughter had been in an automobile accident and suggested the meeting at the hospital.

Since it appears that the telephone call received by Mrs. Juster was not made by Mrs. Pace, as petitioner states he initially assumed, it has been his position that the call could have come from some friend of Brock's or possibly a mutual friend of Brock and Mrs. Pace. Mrs. Juster did testify some five months later that she was wholly unable to remember the name of the caller or whether that person even left a name. The testimony which tends to absolve the petitioner from the consequences of initiating the contact with Mrs. Pace has certain obvious weaknesses, not the least of which is its implausibility. We will not set forth here the many details which tend to deny or substantiate it. We are simply satisfied to say that while the incident could possibly have occurred as related, petitioner has failed in his burden of convincing the members of this court of the probable truth of his explanation. For that reason, we cannot say that the Committee's action was either unreasonable or arbitrary.

It has been suggested by counsel for the Committee that in this situation the court should follow the holding of In re Stone, 74 Wyo. 389, 288 P.2d 767. There the Wyoming court announced that it would support the Committee's recommendation unless it were shown that the Committee acted arbitrarily or abused its discretion. We are not inclined to adopt that procedure. We assume that the Committee may have been confronted with the same problem which we now find ourselves confronted in that it too may not have been wholly convinced by petitioner's explanation. If so, its plain duty was to refuse to certify that petitioner had the requisite

good moral character. It is, however, in this court that the exclusive power to admit to the practice of law rests, and as a concomitant, the duty exists to personally exercise the power. We do not believe that the ultimate responsibility of decision can so readily be avoided.

The foregoing leads us to the consideration of other factors to which we have given considerable weight. We presume that the applicant established his previous good moral character at and to the time of his admittance to the Minnesota Bar in 1948. The investigation of petitioner here has extended through three hearings and over a period of nearly two years. In the course of that investigation, 56 letters have been received strongly recommending the applicant as a person of high moral character. These letters are from judges, lawyers and business men who were acquainted with petitioner in Minnesota. They are furnished in part at the petitioner's request and in part by the National Conference of Bar Examiners which undertook an independent investigation at the request of the State Committee. We have also taken into consideration that in the course of this long investigation the Pace incident is the only one of this nature which has been suggested.

We have, accordingly, arrived at this conclusion. Because the circumstances surrounding the occurrence of the Pace incident are such that the truthfulness of petitioner's explanation can never be conclusively demonstrated, and because his previous good moral character is established in the only place in which it could be established, we will resolve the decision in his favor.

It is ordered that upon subscribing to the oath and the payment of the customary fee, the Clerk issue to Jerome Henry Courtney a Certificate of Admission to practice law and that he be admitted to membership in the State Bar of Arizona.

UDALL, C. J., and WINDES, PHELPS and JOHNSON, JJ., concur.