351 P.2d 169

**Matter of the Application of John Edmund BURKE, Applicant.**

No. 6969.

Supreme Court of Arizona.

April 20, 1960.

Stephen W. Connors and Scott, Cavness & Yankee, Phoenix, for applicant.

Ross D. Blakley, Phoenix, for Committee on Examinations and Admissions of State Bar of Arizona.

UDALL, Justice.

This is an original application by John Edmund Burke for admission to the State Bar of Arizona. It presents one of those rare situations where, after the Committee on Examinations and Admissions, State Bar of Arizona (hereinafter called the committee) has declined to recommend the applicant for admission, the matter is brought directly to this court for determination. We were presented with a similar situation in the Application of Courtney, reported in 83 Ariz. 231, 319 P.2d 991, where the procedural steps and governing principles of law are delineated.

The following facts appear from the record: The applicant, John Edmund Burke, was born in 1908, in St. Paul, Minnesota. He studied law at St. Paul College of Law, and was admitted to practice in the State of Minnesota in 1930, and in Illinois in 1936. In 1952, he sold his home in Minnesota, terminated his law practice there, and moved his family to Arizona. He applied to the committee for permission to take the Arizona bar examination given in July of 1953. Permission was conditionally granted, the committee reserving the right to refuse to recommend him, if the character examination then being conducted should show any moral unfitness for the practice of law. Applicant took the written examination and concededly made a passing grade. However, after the results of the examination as to other applicants were announced, Burke was called before the committee for a hearing on September 25, 1953, the reporter's transcript of which is before us. Immediately thereafter Burke was notified that he would not be recommended to the court for admission as the committee (as then constituted) was of the unanimous opinion that he was "not a fit and proper person to be admitted to the State Bar of Arizona." A perusal of this transcript discloses that inasmuch as no specific charges had been made against him, the applicant at this hearing was largely in the dark as to the factual basis for such adverse action.

From that time until 1959 Burke made sporadic efforts through several local attorneys to have the committee reconsider its decision. Apparently his counsel were advised by members of the committee that if Burke "got into no trouble" and "would wait awhile", the committee would take the matter up again. Finally he became convinced that his only recourse was to make direct application to this court, asking that he be admitted in spite of the committee's refusal to recommend him. It is this application, filed September 28, 1959, which is now before us.

While strictly speaking this is not an adversary proceeding against the committee, yet to bring the matter to a head we issued an order to show cause. In response the committee, through its attorneys, moved to quash the order and to dismiss applicant's motion for admission upon the

grounds, inter alia, that a showing of cause would necessarily involve the disclosure of confidential information; judicial review was improper; the doctrine of laches should operate as a bar; and the committee as now constituted had not denied the applicant a right to re-examination and a reconsideration as to his qualifications to practice law in Arizona, nor had it as yet made a final determination of its reconsideration of the case. It should be noted that the personnel of the committee has completely changed since 1953.

With all parties represented, a hearing was held before us on December 21, 1959, at which time the following order was entered, viz.:

"An informal hearing was had on applicant's *Motion for Admission to the State Bar of Arizona.* Ordered that applicant may not be required by the Committee on Examinations to take another bar examination. Further ordered that the Committee investigate the conduct of the applicant during the past five years, and make recommendations to this Court based on the entire record then before it. The cause is continued to February 1, 1960, for further recommendations."

Pursuant to this order the committee caused the applicant to appear before it on January 29, 1960, at which time an inquiry was made concerning applicant's conduct subsequent to December 21, 1954.

Thereafter on February 8, 1960, the committee advised this court that "such hearing did not develop any facts adverse to the applicant." Nevertheless the committee did unanimously "recommend against the admission of the applicant to the State Bar of Arizona." At the same time the committee filed with the court a sealed confidential character report by the National Conference of Bar Examiners relative to John Edmund Burke, as well as its own confidential office-file containing intercommunications between its scattered members. The entire record has now been painstakingly scrutinized, but for reasons hereinafter stated we cannot in fairness to applicant use that data which is marked confidential.

We do not deem it necessary to make any formal ruling on the motions to quash and dismiss for the reason that we believe the matter should be determined on its merits. The plea of laches—five-year delay—in bringing the matter before us is defeated solely by reason of the representations made by the committee to applicant that the matter was still subject to rehearing.

As we pointed out in the Courtney case, supra, it is not the function of the committee to grant or deny admission to the bar. That power rests solely in the Supreme Court (83 Ariz. 233, 319 P.2d 991). The committee's bounden duty is to

"put up the red flag" as to those applicants about whom it has some substantial doubt. If such doubt exists, then its recommendation should be withheld. The applicant may feel that any questions raised as to his character or qualifications are without substance. In such case, he may apply directly to this court for admission. In the final analysis—it being a judicial function —we have the duty of resolving those questions, one way or the other, on the basis of the *competent evidence* before us. And it should not be considered as any reflection on the members of the committee if we fail to agree with them in a given case.

■ The committee, in its response, takes the position that Burke has failed to bear the burden of proving his good moral character. We cannot agree. On the *open* record before us we cannot reasonably find that Burke has not shown good moral character. Burke's application to this court is accompanied by certificates from the proper officers of the Minnesota and Illinois State Bar Associations to the effect that applicant is a member in good standing with the Bars of those states, together with scores of letters from laymen and prominent members of the bar in Minnesota highly recommending him as an able attorney and a man of integrity. Included within this group are personal letters from a majority of the members of the Supreme Court of Minnesota, together with letters from a goodly number of oth-

er judges of courts of record, both federal and state. There also appear in the file unqualified endorsements from many prominent persons in Arizona, lawyers and laymen alike, who have known him for the past seven years. These include clergymen of his faith who attest to his good qualities as a church and family man. All in all, these present an impressive array.

■ Where, as here, the applicant has borne the burden of producing evidence of his good character, then he may not be excluded from the practice of law unless that good-character evidence is refuted by *competent* evidence of character defects. Nothing appears in the *open* record which is in any way derogatory of Burke.

The particular grounds upon which the committee has withheld its recommendation have never been revealed to Burke. The original statement issued by the committee simply declared: " * * * he is not a fit and proper person to be admitted to the Bar of Arizona." The present committee justifies its position in this respect on grounds that certain information which allegedly impugns the character of the applicant has been given in the strictest confidence and cannot be revealed. This information was received by the committee through the agency of the National Conference of Bar Examiners, an efficient organization which conducts nation-wide investigations of the character and back-

ground of applicants for bar membership in almost every state. The National Conference submitted a confidential report on Burke. As in all such cases, the committee gave its promise that none of the information contained therein would—without the informant's consent—be-disclosed to the applicant. It is on the basis of this secret information that the committee seeks to exclude Burke from the practice of law.

■ We shall not compel the committee to abuse its trust and reveal its sources. This would not only sanction a breach of trust but would dry up its sources and destroy its future effectiveness. However, we cannot allow information of this nature to be used by the committee for the purpose of denying a man due process in so vital a matter as the right to practice his chosen profession. To do so would be to open the door to the most noxious type of character assassination and guilt by innuendo. If respectable persons have derogatory information or bona fide charges to level against an applicant, they should not hesitate to come out into the open and speak the truth. If they insist on hiding behind a cloak of secrecy, then their evidence cannot be used to impeach the character of a man whose only apparent fault has been to acquire a few devious secret enemies.

We hold therefore that denial of admission to the practice of law cannot be solely based upon secret reports not revealed to the applicant. Where it appears that something in the background of the applicant may disqualify him from admission to practice in Arizona then the committee has the duty to follow up, to investigate any derogatory reports, and to verify or disprove them. By the use of means of discovery which will afford due process it may gather *competent evidence* bearing upon such defects of character that can be made a matter of record. If the committee is unable to adduce any such evidence—to offset the showing of good character made by applicant—then a favorable recommendation would appear to be in order.

It is ordered that upon subscribing to the oath and the payment of the customary fee, the Clerk issue to John Edmund Burke a Certificate of Admission to practice law and that he be admitted to membership in the State Bar of Arizona.

STRUCKMEYER, C. J., and PHELPS, JOHNSON, and BERNSTEIN, JJ., concurring.